Curia, per Woodworth, J.
The words spoken are not in themselves actionable. If the action is sustainable, it must be on the ground of special damage.
It is contended on the part of the defendant, that no action can be maintained on the facts alleged in the declara *353 4011. The case of Vicars v. Wilcocks, (8 East. 1,) is relied on as an authority in point. In that case it was held, that when special damage is necessary to sustain an action for slander, it is not sufficient to prove a mere wrongful act of a third person, induced by the slander; but the special damage must be a legal and natural consequence of the words spoken. It appeared, that in consequence of speaking the words, the plaintiff had been dismissed from his employment before the end of the term for which he had contracted. Lord Ellenborough proceeded on the ground, that this was an illegal consequence ; a mere wrongful act of the master for which the defendant was not answerable; ai^I" enquired whether any case could be mentioned'^ of an tion of this sort, sustained by proof only of an injury by1 the tortious act of a third person. If the doctrine here advánced is well founded, it disposes of the case before us.
The learned Judge does not refer to any authority in support of the decision. In my view, it seems to be a departure from well established principles, applicable to this species of action.
Morris v. Langdale, (2 B. & P. 284) was cited on the argument, as supporting the doctrine laid down by Lord Ellenborough. The plaintiff in that case stated, that he was a dealer in the funds, and, as such, had been accustomed to contract; that the defendant said of him, as such dealer, !< he is a lame duckin consequence of which, divers persons refused to fulfil their contracts with him; and he was prevented from fulfilling his contracts with other persons. It was held, that it did not sufficiently appear, either that the words were spoken of lawful contracts, or that the plaintiff was a lawful dealer in the funds ; and that the declaration was therefore bad.
Part of the gravamen was, that divers persons refused to fulüi their contracts. If the test is, that the special damage must be the legal and natural consequence of the words spoken; and that the plaintiff is not entitled to recover because he had a right of action on his contract, it is surprising that this ground had not been taken by the counsel who argued. But it is not even suggested. The opinion of *354 the court also seems to be placed on other grounds. Its is true, Lord Eldon observed, that a doubt had arisen in the mind of the court, whether the special damage had been so laid as to support the action; and that if the plaintiff had sustained any damage in consequence of the refusal of any persons to perform their lawful contracts with him, it is damage which may be compensated in actions brought by the plaintiff against those persons. These remarks were not necessary to the decision of the cause. Admitting them, however, to be correct, the case was not like the present. If persons had refused to fulfil their contracts with the plaintiff) he was entitled to recover damages. The court probably considered it substantially a contract for the payment of money ; in which case the refusal to pay by the debtor, in consequence of the speaking of slanderous words, would not be a ground of special damage.
Most, if not all the cases, for loss of marriage, to be met with in the -books, allege a communication or treaty of marriage only; and that the marriage, was lost by reason of speaking the words. (4 Co. 17. Cro. Car. 269, 322. Cro. Eliz. 787.)
By a communication, or treaty of marriage, must, I think, be understood, that the parties had contracted to marry each other. If this had not taken place, how can it be said correctly, that a marriage was lost ? In this case a valid contract of marriage is set out in the declaration. That the action can be maintained, will not be questioned if it be shown that the law has given this remedy in cases analogous and similar in principle.
It is a general rule, that where a man has a temporal loss or damage by the wrong of another, he may have an action on the case, to be repaired in damages. (1 Com. Dig. action on the case, (A) p. 178.) If a party has several remedies for the same thing, he has an election to pursue either. (Co. Litt. 145. a.) But, after having recovered satisfaction for the injury from one person, he cannot afterwards proceed against any other person for a further satisfacticn (3 Burr. 1354.)
*355 The case of Bird v. Randall, (3 Burr. 1345,) was twice irgued, and decided, after great consideration. The principles recognized and acted on by the court, if sound, are m my mind, decisive of the present question. It appeared that one Burford, by articles of agreement, covenanted to serve the plaintiff for five years as a journeyman ; and bound himself in the penalty of £100. After continuing a part of the time, the defendant procured and enticed him to depart; which he accordingly did. The plaintiff sued Burford for the penalty, and recovered judgment against him; but the money was not actually paid, until after the commencement of the action against the defendant. The question was, whether it was maintainable. It is remarkable that the point, whether the action could be sustained, (inasmuch as the plaintiff had a remedy on the contract,) was not even hinted at by the court or corarse!. It is manifest, that no such notion of the law was then entertained; for Lord Mansfield, who delivered the opinion of the court, observed that the case turned upon two points: 1. Whether the plaintiff could maintain the action, if the £100 recovered against the servant, had been actually received, before the commencement of the action; and 2nd, if it could not, whether the receipt of the money subsequently, would vary the case. I cannot well conceive of a more perfect recognition, that the fact of an existing remedy on the contract formed, no objection. All the reasoning of his Lordship goes clearly to prove this. The ground upon which, he places the decision, is, that satisfaction had already been received; which implies that if it had not, there was no obstacle in the way. This case is very analogous to the one before us. In each, there was a contract between the plaintiff and another person ; and in each, the attempt was to recover damages by proof of an injury sustained by the tortious act of a third person.
If then, the principle recognized in Bird v. Randall, would authorize a recovery, when there was a contract for service, upon which damages might be recovered, I think it will apply with greater force when there has been a con *356 tract of marriage, and performance of it refused in consequence of the slander of the defendant. A contract of marriage looks principally -to a specific execution. It is of a very different nature and character from the preventing of the fulfilment of a contract to pay a sum of money. In th< latter case, the non-fulfilment of the contract by means of c third person, would have no effect on the ability of the con trading party; whereas, in a case of the specific execution of a contract to marry, its value does not depend on the ability of a person to pay damages. It is, indeed, a temporal loss, but of a character not capable of being wholly repaired by the payment of money; the only substitute the law has devised.
But there are other cases which rest on the same principle. If one slanders my title, whereby I am wrongfully disturbed in my possession, though I have a remedy against the disturber, yet I may have an action against him that caused the disturbance. (1 Bac. tit. action on the case, p. 98. Aleyn, 3.) This is equally against the doctrine of Lord Ellenborough; for here damages are given, which were caused by the tortious act of a third person. Again, in the action for enticing away another’s servant, the servant is always liable ; and yet the law is well settled, that the seducer is also liable. (2 Ld. Raym. 1116. Hart v. Aldridge, Cowp. 54. Reeve’s Dom. Rel. 376. 4 Bac. Abr. 593.)
The doctrine contended for, strikes at the root of society; and, in my view, overturns some of the well settled and revered principles of the common law. I cannot, therefore, doubt that the declaration contains a good cause of action ; and that the motion in arrest of judgment should be denied.
The next question is, whether there is ground for a new trial. The plaintiff proved the speaking of the words; and there existed a contract of marriage between Parkman Baker and the plaintiff. This was proved by the admissions and confessions of the defendant. He confessed, that the day had been fixed for their marriage. The marriage was broken off. It is proven that the defendant admitted he had told P. Baker these things, (meaning his pretended illicit intercourse with the plaintiff,) and that he had once pre *357 /ented their marriage ; and wished yet to do so and desired others to assist him in preventing it.
The inference from all this is, not only that he once prevented it by his slanders, which is enough to maintain the action but that he entirely frustrated the marriage. The facts offered to be proved by Halsey Phelps, so far as respects Parkman Baker, were not offered as confirmatory of the evidence given by him; nor to show that he had made declarations consistent with what he had sworn. The offer was to prove a conversation between two persons not parties to the suit, to make out a fact; that P. Baker was not influenced by his father’s slanders ; but the offer went to tvhat Phelps had told P. Baker, as well as what P. Baker had told the witness. As to the declarations of Phelps, they were clearly inadmissible. When the Judge rejected the evidence offered as one connected proposition, if the defendant intended, or wished to prove P. Baker’s declarations to Phelps, as showing the consistency of his evidence, it was the duty of the counsel to offer it in that light, and with that view. The language of the Judge must have been, that he could not admit a conversation between two persons, not parties to the action, to be given in evidence. It is manifest, the defendant did not wish to give in evidence P. Baker’s declarations unaccompanied with what Phelps told him. If the latter was not admissible, then the evidence offered was rightly rejected. The credibility of Parkman Baker was a question for the jury to decide. From the facts in the case, they were fully warranted in disregarding his testimony. The damages, although liberal, are not so extravagant as to require the interposition of the court. There are no grounds to believe the jury were influenced by passion, prejudice or partiality. The motion for a new trial must be denied.