UTICA,  contend, that when one covenants for another, he is not
August, 1827. bound by it, the covenant being in his own name, for him-
La Farge  self, his heirs, &c.
v.
Kneeland.      In this case the covenant is the defendant's own.

The case of *Frontin* v. *Small,* (2 Ld. Ray. 1418, and Str.
705,) is supposed to establish the doctrine, that all contracts
made by an attorney in his own name are void.  In that
case the attorney undertook to lease property belonging
to his principal; and executed the lease, not in the name
of the owner, but in the name of himself; showing upon
the face of the instrument, that it conveyed nothing.  There
[*456]    was, therefore, no consideration for the covenant to *pay
rent.  The case of *Bogert* v. *Bussey,* (6 John. 94,) was de-
cided on the same principle.  The attorneys had not exe-
cuted a conveyance; but obligated themselves to do an act
which they, and all parties concerned, knew would be void.
The instrument itself was, therefore, held void.  The pre-
sent does not belong to that class of cases; but to those
where the attorney assumes a personal responsibility in re-
lation to the concerns of his principal, if the defendant is
considered an attorney for the Raymonds; and if not, then
the covenant is clearly his own.  The plaintiff is entitled
to judgment on the demurrer; with leave to amend.

Rule accordingly.

SUTHERLAND, J., not having heard the argument, gave
no opinion.

---

LA FARGE and PATTERSON *against* KNEELAND.

A party can-  ASSUMPSIT; tried at the New York circuit, November
not give in evi- 9th, 1825, before EDWARDS, C. Judge.
dence his writ-
ten statement
concerning a claim against his adversary, made before arbitrators, (*e. g.* a committee of the
chamber of commerce,) though his claim has been answered there by his adversary; it not
appearing that his statement was submitted to his adversary, before his answer was put in.
    *Semb.* that in no case would it be admissible except to explain the answer.
    A letter of instructions, by the consignors to their consignees of goods, expressing a hope

The case at the trial was this: Bogert & Kneeland consigned 36 bales of cotton to the plaintiffs at Havre, in November, 1818. One of the plaintiffs, La Farge, being in New-York, made an advance of 20 cents per pound, upon the cotton, then valued at 30 cents. The letter of *instructions from Bogert & Kneeland, informed the consignees, the plaintiffs, that the cotton was shipped for account of Messrs. Braham & Atwood, of Huntsville, Alabama; and expressed a hope and request that the cotton might not be sold at a loss on the invoice. The cotton was sold for less than the advance; and this action was brought to recover the deficiency.

It appeared that these parties had submitted the subject matter of this suit to a committee of the chamber of commerce in the city of New York, who had received the written statements of the parties; but as they differed on some material facts, and as that tribunal does not pass upon contested facts by the examination of witnesses, they declined making any award or decision.

The plaintiffs introduced and read in evidence, the statement made to the chamber of commerce by Bogert & Kneeland; in which it is stated that La Farge saw the invoice before the advance was made; and knew that Bogert & Kneeland were the mere agents of Braham & Atwood.

The plaintiffs' counsel then offered to read La Farge's statement before the chamber of commerce; and further,

and request that the goods will not be sold at a loss on the invoice, is not peremptory; and the goods may, notwithstanding, be sold at a sacrifice.

Consignees are bound by the instructions of the consignor, though the advances of the former on the goods exceed the net amount of sales.

The agent of a consignor, receiving advances on goods from the consignee, is personally liable to refund, unless he has paid over the advances to his principal; or altered his relation in respect to him; as by giving fresh credit.

So of any agent receiving money for his principal.

But where K., as agent of B. & A., consigned goods to L. & P., on advances from the latter; and immediately credited the advances to B. & A., to whom a balance was still due from K.; and then B. & A. consented that K. should transfer this credit to his private account against B. alone, who would still owe him a balance on private account between them; which was done; held, that this was equivalent to actual payment of the money; and though the goods sold for less than the advance, yet held, that K. was not liable for the difference.

Otherwise, if the credit had remained a simple and direct one to B. & A.

Where a verdict is set aside for misdirection of the judge, or the finding of the jury against the law of the case, the costs should abide the event of the suit.

UTICA,
August, 1827.

La Farge
v.
Kneeland.

to show that it had been submitted to Kneeland before his answer was made. This was objected to; but admitted. It was not proved, however, that Kneeland had previously seen La Farge's statement; but only that the practice of that tribunal required this. In his statement, La Farge denied any knowledge or information of the cotton belonging to Braham & Atwood. It further appeared, that when the account sales were produced, Kneeland said the balance would be paid when it could be collected from Braham & Atwood.

When the advance on the cotton was received, it was immediately carried to the credit of Braham & Atwood by Bogert & Kneeland, the former having still a large balance in their favor. That balance was, by order of Braham & Atwood, transferred to, and credited on Bogert & Kneeland's account against Braham individually; and a copy furnished to Braham containing the credit. After *such credit to Braham, there still remained and yet remains, a considerable balance due from him to the defendant. No further transactions had taken place in account between the defendant and Braham & Atwood; and no money had been paid to them on account of the advance.

[*458]

The judge charged the jury that the letter of instructions was not so positive as to restrict the discretion of the consignees, as to the sale of the cotton. That the plaintiffs had shown enough to entitle them to recover against Braham & Atwood. But as the defendant acted as agent only, and disclosed his principals; and had subsequently appropriated the balance, with Braham & Atwood's consent, he was not liable.

The jury, however, found a verdict for the plaintiffs, of $771 71.

*H. W. Warner*, for the defendant, now moved for a new trial. He said the statements drawn up by La Farge, for the committee of the chamber of commerce, were improperly received in evidence. (1 John. Ch. Rep. 131.)

But the loss, if any, arose from the plaintiff's misconduct,

in selling for less than was directed by the letter of instructions. (3 Cowen, 281; 6 Cowen, 128.)

Again; the defendant acted as agent, and revealed his principals; and, therefore, is not liable.

But if there ever was any liability upon the defendant, it was discharged by the arrangement between him and the house of Braham & Atwood, in pursuance of which the balance was carried to the credit of the former. This was an appropriation of, and equivalent to the payment of the money over to the principals.

Besides; the defendant's liability was discharged by the plaintiffs accepting and agreement to pay when in funds, *i. e.* when the money should be collected of Braham & Atwood.

*G. Brinckerhoff,* contra. The instructions were not of a character to bind the plaintiffs as to price. (3 Cowen, 281; Pal. on Ag. 294, 304, 305.)

The defendant, not having paid over the money, is legally bound to refund the deficiency. Placing the amount to the credit of his principals, is not such a payment as will exonerate him.

[*459]

*Curia, per* SAVAGE, Ch. J. The question first arising in the order of the trial, is, whether the statement of La Farge before the tribunal of commerce, was properly received in evidence. I think it was not. It was the plaintiff's own statement of their case; and could no more be introduced by them, than a bill in chancery by the complainant, after having read the answer. That, I believe, is never allowed. The defendant may, no doubt, introduce a document coming from the plaintiffs, by way of explaining what he has himself said, or put in as an answer; but to me it is a new mode of evidence, for a party to introduce his own declarations in his own cause. If it was intended to show that the facts contained in the statement were impliedly admitted by Kneeland, then the proof failed; for the witness could not swear that Kneeland ever saw La Farge's statement

before his own answer was put in. I think, therefore, that paper was improperly admitted.

The plaintiffs were bound to pursue the instructions notwithstanding their advances. (6 Cowen, 128.) But the instructions in this case were not so positive as to prevent the exercise of their discretion in making sale of the cotton. The consignors express a hope and request, that there may be no loss on the invoice. This clearly implies that there may be such loss. They might, with equal ease, if such had been their desire, have said positively that no sale should be made below the invoice price. (3 Cowen, 281.)

The main question in the case is, whether the defendant can be made liable, he having disclosed his principal at the time? And if that alone is not a sufficient defense, then whether he has so paid over or disposed of the money, as to alter his relation to his principals in respect to it.

The general rule, no doubt, is well settled, that an agent who discloses his principal, and so contracts as to give a [*460] *remedy against the principal, is not liable personally, unless it was clearly his intention to assume personal responsibility. But where money has been paid to an agent for his principal, under such circumstances that it may be recovered back from the latter, then it may be recovered from the agent, provided he has not paid it to his principal, nor altered his situation in relation to him; for instance, by giving fresh credit. That point was so decided in *Buller* v. *Harrison*, (Cowp. 565.) There was, in that case, no doubt of a right once to recover from the principal; but the agent of the defendant had given credit to his principal, and rendered him his account containing the credit. His situation, however, was not altered in any other respect. Lord Mansfield said the jury were embarrassed with the question, whether this was a payment over. He said, for some purposes, it would be a payment over; and the law was clear that an agent who received money, by mistake, and paid it over, was not liable; but the principal. As there was no alteration, however, in the situation of the agent, in relation to his principal, it was held wrong that he should be in any better situation than if the mistake had

not happened. It was, therefore, the opinion of the court, that the agent should pay back the money. In *Cox* v. *Prentice*, (3 M. & S. 348,) Lord Ellenborough says, "I take it to be clear that an agent who receives money for his principal, is liable as a principal, so long as he stands in his original situation; and until there has been a change of circumstances, by his having paid over the money to his principal, or done something equivalent to it."

In this case, the defendant has not paid over the money to Braham & Atwood, in any other manner than by passing it to their credit. There was then a large balance in their favor. But Bogert & Kneeland had also an account with Braham alone, who did business upon his own account, as well as in connection with Atwood. Atwood, one of the partners, was in New York. The money was received and credited on the 12th of November, 1818. An account of sales was rendered on the 28th of the same month; *when the [*461] credit due to Braham & Atwood was, by their order, transferred to the credit on Braham's separate account. Had this transfer been made to the account of any person distinct from the firm of Braham & Atwood, it would be considered equivalent to a payment. It closed the concerns of Bogert & Kneeland with Braham & Atwood. Braham, in his individual capacity, had nothing to do with Braham & Atwood. I think, therefore, the judge was correct in charging the jury that this was such an appropriation of the money as excused the defendant from liability.

The ground upon which agents have been held liable, in such cases, is, that there has been no change in the relative situation of the parties. Where there is a mere passing of credit on the books, for instance, the agent still has it in his power to redress himself. It is not, however, in the power of Kneeland, the defendant, to alter the credit to Braham. He cannot retain the money, as he might have done, had no transfer been made. Kneeland virtually paid the money to Atwood, and received the same amount on account against Braham.

I think, therefore, the plaintiffs ought not to recover; and that a new trial should be granted.

UTICA,          As the judge erred in receiving testimony, and as the
August, 1827.   question of appropriation, upon which the jury erred, is a
· Dawes         question of law, (Cowper, 566,) I think the costs should
     v.
N. R. Ins. Co.  abide the event.  It is not strictly a verdict against evi-
                dence only.

                                             Rule accordingly.


                SUTHERLAND, J., not having heard the argument, gave
                no opinion.


[*462]          *DAWES *against* THE NORTH RIVER INSURANCE
                              COMPANY.


The presi-      ASSUMPSIT on a policy of insurance against fire; tried at
dent of the
North River     the New York circuit, December 5th, 1825, before ED-
Ins. Co., incor- WARDS, C. Judge; when the plaintiff made out the follow-
porated by the
statute, (sess.  ing case:
45, ch. 23,) the
9th section of      The defendants, by a policy, duly executed, insured
which requires  against fire, for the plaintiff, a large quantity of wines and
one third of
the directors   other liquors, valued at $3000.  Certain conditions were
to constitute   annexed to the policy, and made part of the contract.  The
a quorum for
doing business, ninth condition required of the insured, the production of
&c., has no     certain documents, and, (among others,) a certificate under
power, as pre-
sident,         the hand of a magistrate, notary public, or clergyman, that
waive the       they were acquainted with the character and circumstances
preliminary
proof upon a    of the insured; and that, having investigated the circum-
policy of insu- stances of the loss, they knew or believed that the insured
rance; or, in
general, to do  had sustained loss to the amount mentioned; and until
other business  such proof, &c., should be produced, the loss should not be
for the com-
pany.           payable.
The general
rule is, that a     The plaintiff, in his declaration, averred that the pro-
corporate body  perty was burnt, &c.; that the plaintiff procured and pro-
can act only in
the mode pre-   duced the certificate of Robert J. Cheeseborough, a notary
scribed by the
law creating    public, that he had examined into the cause of the loss,
it.
The rule
that strict preliminary proof may be waived in case of fire insurance, the same as in case
of marine insurance, recognized.