*Orphans' Court, Dauphin County, December 19th, 1859.*

### In the Matter of Ayres's Estate.

When a public escheator failed to pay to the commonwealth money collected by him in his official capacity, an informer has no claim upon his estate for his commission.

Claims not barred by the statute of limitations at the time of the death of the decedent may be recovered in the Orphans' Court any time before the settling up of the estate.

By the Court.—Two exceptions have been taken to the report of the auditor in this case. *First.* For rejecting the claim arising out of the escheat of James Redmond's estate. It seems that Mr. Ayres was appointed deputy escheator-general; and as such, caused the estate to be sold, received the money either in that capacity, or as attorney for the commonwealth, and never paid the same or any part thereof into the State treasury. His estate is entirely insolvent, only paying five cents on the dollar. The creditors claim that this money is coming to the commonwealth, and therefore the debt is postponed, must be paid last, under section 21 of the act of 24th of February, 1834. The person giving information of the escheat insists that although the debt is nominally due to the State, a certain portion thereof is actually coming to himself, and that he has a right to come in *pari passu* with the other creditors. The various acts of Assembly require the money arising from escheats to be paid into the State treasury, and provides for refunding it to the heirs under certain conditions, should known kindred afterwards present and establish their claims. Sections 9 and 10 of the act of 20th of September, 1787, fix the amount to be paid to the informer, and direct the money to be paid to him out of the State treasury, he giving security to refund on certain conditions therein specified. The claim of the informer is on the State treasury, not on Mr. Ayres. There never was a right of action by the informer against him, and between the two there is a total want of privity. It is very true that by reason of the failure of Mr. Ayres to pay the money into the treasury, the informer may wholly lose his claim, but that does not prove that Mr. Ayres was his debtor. The State would become so on the money coming into the treasury, but not before. This claim was correctly rejected by the auditor.

*Second.* Exceptions have been taken to a number of claims, which the objectors say are barred by the statute of limitations.

[In the Matter of Ayres's Estate.]

The report shows that the debts were not barred at the time of the decedent's death, in May, 1856, but were when presented before the auditor in 1859. It has not been shown whether the claims were presented to the administrator within the year after the death of the decedent, and possibly that is not important. Section 1 of the act of 24th of February, 1834, varies essentially from section 14 of the act of 19th of April, 1794, in this: the first-named law only requires that notice shall be given for all persons having claims to present them within one year, whilst the act of 1794 declared that all claims not so presented should be forever barred from recovery if the assets proved insufficient. Yet the commissioners for revising the code seem to have overlooked the variance, and say they only require six instead of four weeks' publication. Under the former law, it is very clear that all of their accounts would be postponed if not presented in time; and if not filed with the administrator, there would be good ground for saying they could in no event claim any dividend. Whether the claims were or were not presented, is not in proof, and in our judgment that can make no essential difference under the statute of limitations. Under the decisions, it seems to make none whatever. We had always understood until recently that when the statute of limitations began to run, it ran over all obstacles, death of the party, infancy, coverture, absence from the United States, etc., and that the claim was barred in all courts; that the same rule of law prevailed whether the account was sued in the Common Pleas, or presented before an auditor in the Orphans' Court. McClintock's Appeal (5 C. 360), and Mitcheltree *v.* Veach (7 C. 455), seem to establish a different rule. By the first of these decisions, it is settled that if the statute has not run in the lifetime of the decedent, the claim may be brought against the estate at any period before it is finally settled, provided an auditor is appointed to make distribution among creditors; and by the latter it cannot be recovered in the Courts of Common Pleas. Therefore if a simple contract debt had remained due for five years and six months before the intestate's death, the creditor would be barred by the statute if he commenced an action in a court of common law one year afterwards, but would not be barred at the end of ten years (if the administration account so long remained unsettled) provided he presented his claim before an auditor appointed to distribute the assets. We think this is reversing the legal maxim of *vigilantibus non dormientibus jura subveniunt,* and it is also calculated to drive parties from the courts of common law (the natural and constitutional tribunals for settling legal disputes) into a new statutory tribunal, never calculated nor intended for that purpose. It was formerly held that on the hearing before the auditor, each creditor was at liberty to contest the validity of every claim presented (Kittera's Estate, S.

C., 11 Penna. L. J. 446). But it seems that the important barrier of lapse of time, and the presumption of payment therefrom, is now confined to the courts of common law. It is for the Supreme Court to reconcile this conflict. The auditor was right in following the decisions, and they are equally obligatory on us, although we take the rule as one of faith and not of judgment.

The exceptions are overruled, and the report confirmed.