# N. Y. COMMON PLEAS.

JOHN M. BIXBY agt. FRANCIS A. DREXEL and others.

*Agents — liability for money received and paid over to principals — Remittance and acceptance by telegram regarded as a payment.*

Where, for a long time, agents and their principals had telegraphed and acted upon "exchange accounts," in the absence of fraud and want of notice, the credit and acceptance by telegram of a certain amount in dispute should be regarded as a payment within the spirit and meaning of judicial authority.

Where plaintiff was directed by B. B. & Co.. his bankers, to reimburse them by a payment to defendants, their receipt of the money (it being within the scope of their authority) creates no obligation on their part to make restitution after they have, in good faith, accounted for and paid over the proceeds of the collection.

Although an action may be maintained against an agent who has received money, to which his principal has no right, a party must be held to some degree of diligence in charging liability upon such agent. He will not be allowed to wait until the agent has parted with the funds and then claim restitution because there was a running account between him and his principals upon which the amount might have been credited.

*Special Term, February*, 1879.

*A. R. Dyett*, for plaintiff.

*Charles Tracy* and *Charles E. Tracy*, for defendants.

LARREMORE, *J.* — On October 16, 1872, the firm of Bowles Brothers & Co. of this city issued their letter of credit, No. 5,390, for £2,000 to the plaintiff, who, with his son and agent, Robert F. Bixby, executed a contemporaneous agreement in consideration of such credit facilities to reimburse Messrs. Bowles Brothers & Co. for any and all sums paid by them or

their agents in good faith under such credit, together with all exchanges, interest and costs, and a commission of one per cent for their benefit therein.   They were further authorized to reimburse themselves for all such sums and charges by their draft upon cash in account to be deposited from time to time by Robert F. Bixby, of New York.   On November 4, 1872, plaintiff being then in Paris, drew his bill of exchange to the order of James W. Tucker & Co. for the sum of £100, directing the firm of Bowles Brothers & Co., in London, to pay said amount three days after sight and charge the same to the account of letter of credit No. 5,390.   The bill for value paid was delivered by plaintiff to the payees thereof, who indorsed the same to the firm of Clews, Habicht & Co., by whom it was presented to the drawees thereof, who, on November 5, 1872, accepted the same, payable at the Union Bank of London.

When the bill matured it was duly presented for payment and was duly protested for non-payment, the acceptors thereof being then insolvent.   No part of the bill has since been paid by the drawees, or by any one, in their behalf.   Notice of said non-payment and protest was given to plaintiff, who, thereupon, on or about November 20, 1872, paid to James W. Tucker & Co., by their agents in New York, the amount thereof, interest and notary's fees — in all $565.32.

Meanwhile, and on November 16, 1872, the said drawees applied to Robert F. Bixby, plaintiff's agent in New York, by a written order, signed by them, and represented to said agent that the bill of exchange had been paid and requested repayment of the amount thereof through the agency of the defendants, the bankers of said drawees in New York, which repayment was made by plaintiff's agent without knowledge of the fact of non-payment and protest of the bill of exchange.   It is claimed by the defendants that while the written order for repayment was on its passage, the firm of Bowles Brothers & Co., for a valuable consideration, assigned the same to a certain firm of J. S. Morgan & Co., of London, which last-

named firm constituted the defendants their agent at the city of New York to receive and collect the same, and that, in pursuance of such authority and without knowledge of the non-payment of the bill of exchange, the defendant's immediately, and on the same day of the repayment thereof by plaintiff's agent remitted and paid over the proceeds thereof to the firm of J. S. Morgan & Co.

After the plaintiff had discovered such repayment by his agent, and before, as he claims, the defendants had parted with the possession of the proceeds, or. parted with any thing of value upon the faith of the written order for repayment, he (plaintiff) notified defendants of the dishonor of the bill of exchange, and demanded a return of the said sum of $565.32, paid by his agent under the alleged misapprehension and mistake. This the defendant refused to do, and plaintiff sues for the recovery of the amount thus paid.

The testimony discloses no proof of bad faith on the part of the defendants. They acted as the agents of J. S. Morgan & Co. in the repayment of plaintiff's draft. The bill of account or order of repayment of November 16, 1872, fixed no personal liability upon them. It was not proved that they had knowledge of the dishonor of the draft, at the time they cabled their principals of its repayment in New York. There was no consideration on their part that created any liability to the plaintiff. They collected and remitted by cable, November 20, 1872, the sum paid by plaintiff's agent on the day of its payment. It was not until between December 2 and 19, 1872, that he demanded a return of the money as paid by mistake. When interrogated as to the transmission of the credit on his payment of the draft, he, while denying notice of such transmission, testifies : "I have an indistinct recollection something was said about it " (*Stenographer's min.*, *p.* 18). His answer to the following questions are significant :

Q. When you paid that money to Drexel, Morgan & Co. did you have information that the bill of exchange had not been paid, or any suspicion of it ? A. I think not.

Bixby agt. Drexel.

Q. Did you know that the draft had not been paid until you received a letter from your father or Mr. Tucker? A. I did.

And yet, in the face of this fact, he paid the amount. He further testified that he had an impression, but was not positive, that he made a demand upon defendants to refund prior to December 18, 1872 (*stenog. min., p.* 27), but could not swear to it positively (*Minutes, p.* 28).

Contrast with this testimony of Mr. Morgan, which shows satisfactorily that the sum paid by plaintiff's agent was remitted to J. S. Morgan & Co. within a day or two after it was paid (*minutes, p.* 32) by cable transfer, which action was ratified by that firm by letters of November 23 and November 27, 1872. It appeared that this draft was included in the special exchange account between the defendants and their London house, and did not enter into the general collection accounts between the same parties. The failure of the Bowles Brothers & Co. was announced November 9, 1872, and the repayment was not made until eleven days thereafter, November 20, 1872, within which time no notice of the dishonor of plaintiff's bill of exchange was brought to defendants' knowledge. According to the testimony the acceptance of Bowles Brothers & Co. was considered and treated as a payment.

As against the telegraphic remittance, which was actually sold to third parties, defendants have no reclamation against their principals. The special exchange account showed a balance struck and settlement made which the plaintiff a month afterward sought to impeach. But I cannot disregard the means which scientific discovery has established for the facility of business transactions. For a long time the defendants and their principals had telegraphed and acted upon exchange accounts, and in the absence of fraud and want of notice, the credit and acceptance by telegram of the amount in dispute should be regarded as a payment within the spirit and meaning of judicial authority (*Story on Agency; sec.* 300 ; *Hearsary* agt. *Pruyne,* 7 *John.,* 182; *Lafarge* agt. *Kneeland,*

7 *Cow.*, 460 ; *Frye* agt. *Lockwood, id.*, 456 ; *Mowatt* agt. *McLelan*, 1 *Wend.*, 173 ; *Colvin* agt. *Holbrook*, 2 *Coms.*, 129 ; *Langley* agt. *Warner*, 3 *N. Y.*, 327 ; *Mayer* agt. *The Mayor, &c.*, 63 *id.*, 457).

It was urged by plaintiff's counsel that the defendants should have disclosed their agency, and that for their omission in this respect they are personally liable. The principle upon which such a liability exists is not supported by the evidence in this case. They are not shown to have been guilty of fraud, collusion or any wrongful act. They simply received a voluntary payment of money which they at once, in accordance with an established and recognized usage, transmitted to their principals.

In the *Canal Bank* agt. *Bank of Albany* (1 *Hill*, 287) the money was obtained on a forged indorsement, and the defendant's liability was placed upon the ground that no title passed. To the same effect is *Holt* agt. *Ross* (54 *N. Y.*, 472). *Mills* agt. *Hunt* (20 *Wend.*, 432) is not in point. That was the case of an auctioneer's selling property at public auction without disclosing his agency. In *Hochster* agt. *Baruch* (5 *Daly*, 440) the agent had exceeded his authority, and moreover, he had contracted as principal. I find nothing in *Taintor* agt. *Prendergast* (3 *Hill*, 72), *Cox* agt. *Prentice* (15 *Maule & Selwyn*, 344), *Buller* agt. *Harrison* (2 *Cowper*, 565), *Langley* agt. *Warner* (3 *N. Y.*, 330) that disturbs my confidence in the conclusion I have reached. If the doctrine of agency were applicable in this case, the defendants on the authority of *Langley* agt. *Warner* (*supra*), are entirely absolved from responsibility. Their principals had a perfect right to the money when it was received, and there is no pretense that until at least eleven days after such payment they had any notice of the mistake (for such it obviously was) in the remittance of the money. But I incline to the view that, as between these parties, the question of agency is not in this case. Plaintiff was directed by Bowles Bros. & Co., his bankers, to reimburse them by a payment to defendants. Their

Bixby agt. Drexel.

receipt of the money (which was within the scope of their authority) created no obligation on their part to make restitution after they had in good faith accounted for and paid over the proceeds of the collection. Plaintiff must be held to some degree of diligence in charging liability upon the defendants. He did nothing until. they had parted with the funds, and then claimed restitution because there was a running account between the defendants and their principals, upon which the amount in dispute might be credited.

I cannot recognize the justice of such a claim. The testimony is undisputed that the telegraphic "exchange account" was intended and understood to be an actual payment of the amount transmitted by cable. For this reason there should be judgment in favor of the defendants, for a dismissal of the complaint, with costs.