Rel: September 12, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **<u>Southern Reporter</u>**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **<u>Southern Reporter</u>**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2024-0274

_____

## Russell A. Collins and Stacey D. Collins

### v.

## West Alabama Bank & Trust

### Appeal from Tuscaloosa Circuit Court
### (CV-23-900118)

_____

### SC-2024-0275

_____

## Russell A. Collins and Stacey D. Collins

### v.

**West Alabama Bank & Trust**

**Appeal from Tuscaloosa Circuit Court**
**(CV-23-900985)**

PER CURIAM.

In these consolidated appeals, Russell A. Collins and Stacey D. Collins appeal from summary judgments entered by the Tuscaloosa Circuit Court in favor of West Alabama Bank & Trust ("West Alabama Bank") in two separate actions. For the reasons explained below, we affirm the circuit court's judgments.

<u>Facts and Procedural History</u>

In November 2022, West Alabama Bank commenced in the circuit court an ejectment action against the Collinses and other fictitiously named defendants concerning certain rental property owned by the Collinses ("the rental property"). West Alabama Bank had purchased the rental property at a foreclosure sale that it had also conducted.

In February 2023, West Alabama Bank commenced in the circuit court a second ejectment action against the Collinses and other fictitiously named defendants concerning the real property where the

Collinses resided ("the residential property"). As with the rental property, West Alabama Bank purchased the residential property at a foreclosure sale that it had also conducted.

The Collinses answered the complaint in each action, asserting the following as affirmative defenses:

> "[West Alabama Bank] has no title to the property because the foreclosure sale is void. The foreclosure sale is void and must be put aside because the sales price was so inadequate as to shock the conscience. [The Collinses] further assert lack of notice, estoppel, fraud, trickery, unfairness[,] culpable mismanagement[,] and illegality."

The Collinses also asserted several counterclaims against West Alabama Bank in each action.

West Alabama Bank later moved for a summary judgment in each action. On February 21, 2024, the circuit court entered in each action a summary judgment in favor of West Alabama Bank on its ejectment claim and in favor of West Alabama Bank on the Collinses' counterclaims. Among other things, the circuit court also concluded that the Collinses had forfeited any statutory right of redemption concerning the real properties at issue.

On February 28, 2024, the circuit court entered an order in each action stating, in relevant part:

3

"The Court does not believe and has not interpreted [West Alabama Bank's c]omplaint to assert monetary damages against [the Collinses;] however, to the extent any claim for monetary damages could be interpreted from the [c]omplaint and to resolve [the Collinses]' concerns that the February 21, 2024[, o]rder … is not a final judgment, the Court accepts … West Alabama Bank[]'s waiver of such claims and hereby dismisses any such claims with prejudice. …  The February 21, 2024[,] order of this Court is a final judgment."[1]

---

[1]As noted above, West Alabama Bank's complaint in each action also included fictitiously named defendants.  However, at the time of the entry of the circuit court's judgments, the Collinses were the only defendants who had been served; West Alabama Bank did not substitute any parties for the fictitiously named defendants identified in its complaints.

"'When there are multiple defendants and the summons or other document to be served and complaint has been served on one or more, but not all, of the defendants, the plaintiff may proceed to trial and judgment as to the defendant or defendants on whom process has been served and if the judgment as to defendants who have been served is final in all other respects, it shall be a final judgment.'  Rule 4(f), [Ala. R. Civ. P.,] as amended March 1, 1982.

"Under Rule 4(f), service on the other defendants must be completed, not merely attempted, before it can be said the pending action involves other active defendants."

Owens v. National Sec. of Alabama, Inc., 454 So. 2d 1387, 1388 n.2 (Ala. 1984). See also Ex parte Harrington, 289 So. 3d 1232, 1237 n.5 (Ala. 2019)("A judgment that disposes of fewer than all the defendants is final when the defendants as to whom there has been no judgment have not yet been served with notice.").

On March 22, 2024, the Collinses filed in each action a postjudgment motion seeking to vacate the circuit court's February 21, 2024, summary judgment.[2] The circuit court denied the postjudgment motions on March 28, 2024, without conducting a hearing.

The Collinses appealed to this Court from each of the circuit court's judgments. Appeal no. SC-2024-0274 involves the residential property; appeal no. SC-2024-0275 involves the rental property. We consolidated the appeals.

## Standard of Review

"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the

---

[2]The Collinses' March 22, 2024, postjudgment motions were timely, whether the time for filing the motions is counted from February 21, 2024, or from February 28, 2024. See Rule 59(e), Ala. R. Civ. P. ("A motion to alter, amend, or vacate the judgment shall be filed not later than thirty (30) days after entry of the judgment.").

existence of a genuine issue of material fact. <u>Bass v. SouthTrust Bank of Baldwin County</u>, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' <u>West v. Founders Life Assur. Co. of Fla.</u>, 547 So. 2d 870, 871 (Ala. 1989)."

<u>Dow v. Alabama Democratic Party</u>, 897 So. 2d 1035, 1038-39 (Ala. 2004). In the context of a summary judgment, we review questions of law de novo. <u>Moore v. Moore</u>, 297 So. 3d 359, 362 (Ala. 2019).

Discussion

On appeal, the Collinses argue that genuine issues of material fact exist regarding whether the foreclosure sales are void because of the allegedly inadequate foreclosure-sale prices, allegedly unfair conduct by West Alabama Bank, and West Alabama Bank's alleged breach of its duty of good faith. Second, the Collinses argue that the circuit court erred by determining that the Collinses had forfeited their statutory right of redemption concerning the residential property. Finally, the Collinses argue that the circuit court erred by failing to conduct a hearing regarding their postjudgment motions.

I. <u>Evidence Submitted Postjudgment By the Collinses Not Considered</u>

6

Before considering the Collinses' arguments on appeal, we must first address West Alabama Bank's contention that the Collinses' arguments before us improperly rely, in part, on evidence that the Collinses produced for the first time in support of their postjudgment motions to vacate the circuit court's judgment in each action. See Moore v. Glover, 501 So. 2d 1187, 1189 (Ala. 1986) ("This is not the purpose of a Rule 59(e) motion. A motion for reconsideration made after the entry of an order granting a summary judgment is not proper where the motion is not directed to a reconsideration of the evidence upon which summary judgment was based or does not seek a reargument of the legal considerations underlying the initial judgment, but is instead simply used by the plaintiff to submit evidence, belatedly, in opposition to the defendant's motion for summary judgment. A Rule 59(e) motion does not operate to extend the time for filing affidavits or other material in opposition to a motion for summary judgment.").

In their reply brief, the Collinses respond to West Alabama Bank's argument by asserting that the evidence they submitted in support of their postjudgment motions related to their affirmative defenses of "lack of notice, estoppel, fraud, trickery, unfairness, culpable

7

mismanagement[,] and illegality." Collinses' reply brief at 1. The Collinses contend that, in opposing West Alabama Bank's summary-judgment motions, the burden of production never shifted to the Collinses regarding those affirmative defenses because West Alabama Bank's summary-judgment motions argued only that no genuine issue of material fact existed regarding the adequacy of the foreclosure-sale prices and did not address the other affirmative defenses listed in the Collinses' answers.

In its summary-judgment motions, West Alabama Bank requested summary judgments in its favor regarding "any and all claims" asserted in its complaints and any counterclaims asserted by the Collinses against it. The motions also asserted: "[The Collinses]' sole dispute with [West Alabama Bank]'s foreclosure of the [m]ortgage and demand for possession is that the credit bid of [West Alabama Bank] was so inadequate as to shock the conscience of a reasonable person." Similarly, in each of its judgments, the circuit court stated:

> "The sole issue raised by [the Collinses] in defense to (and as a counterclaim against) [West Alabama Bank]'s claim for possession is [the Collinses'] assertion that the foreclosure was improperly conducted. Specifically, [the Collinses] allege that the credit bid of the entire indebtedness due under the [promissory n]ote was unconscionably low, rendering the

foreclosure sale ineffective."

(Emphasis added.)

In their postjudgment motions, the Collinses stated: "[The] Collins[es] raise the affirmative defense that the underlying foreclosure sale was defective and is due to be set aside as void due to the inadequate sales price, <u>as well as</u> lack of notice, estoppel, fraud, trickery, unfairness, culpable mismanagement[,] and illegality." (Emphasis added.) The Collinses' postjudgment motions did not contain a specific argument that the circuit court had erred by entering summary judgments in favor of West Alabama Bank regarding the Collinses' affirmative defenses that had not been addressed in West Alabama Bank's summary-judgment motions.

On appeal, the Collinses rely on this Court's decision in <u>Sampson v. Heartwise Health Systems Corp.</u>, 386 So. 3d 411, 418 (Ala. 2023). They contend:

> "[N]o burden ever shifted to [the Collinses] to present substantial evidence on the unchallenged defenses. The Collinses did oppose [West Alabama] Bank's specific challenge as to whether the inadequacy of price alone was sufficient to set aside the sale, and in opposition provided undisputed evidence as to the assigned fair market values of the [r]esidential [p]roperty and the [r]ental [p]roperty. Because [West Alabama] Bank did not seek summary

9

judgment on the remaining seven (7) defenses, those defenses were not brought before the trial court by the summary[-]judgment motions, and the Collinses were not required to address anything that was not properly brought before the trial court by [West Alabama] Bank. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact."

Collinses' reply brief at 9-10.

In <u>Sampson</u>, this Court held:

> "'"[A] defendant who moves for a summary judgment on the ground of 'a failure of the [plaintiff's] evidence ... must indicate where the [plaintiff's] case suffers an evidentiary failure.' <u>Kennedy v. Western Sizzlin Corp.</u>, 857 So. 2d 71, 78 (Ala. 2003). If such a summary-judgment motion 'does not inform the trial court (and the [plaintiff]) of a failure of the [plaintiff's] evidence on a fact or issue, no burden shifts to the [plaintiff] to present substantial evidence on that fact or issue. Therefore, summary judgment for a failure of proof not asserted by the motion for summary judgment is inappropriate.' <u>Tanner v. State Farm Fire & Cas. Co.</u>, 874 So. 2d 1058, 1068 n.3 (Ala. 2003) (citations omitted).
>
> "'"<u>Thus, ... a trial court should not grant a summary judgment, and an appellate court will not affirm one, on the basis of an absence of substantial evidence to support an essential</u>

element of a claim or affirmative defense unless the motion for a summary judgment has properly raised that absence of evidence and has thereby shifted to the nonmoving party the burden of producing substantial supporting evidence."

"'Hollis v. City of Brighton, 885 So. 2d 135, 140 (Ala. 2004). See also Turner v. Westhampton Court, L.L.C., 903 So. 2d 82, 87 (Ala. 2004) (stating that "[s]ummary judgment cannot be entered against the nonmoving party on the basis of a failure of that party's proof unless the motion for summary judgment has challenged that failure of proof").'

"Kruse v. Vanderbilt Mins., LLC, 189 So. 3d 42, 55 (Ala. 2015)(plurality opinion)."

386 So. 3d at 424-25 (emphasis added).

In a footnote, the Sampson Court also suggested that, if a trial court commits an error like those described above, it is reversible, "regardless of whether a Rule 59(e)[, Ala. R. Civ. P.] motion was filed." Id. at 425 n.8. The Collinses' reply brief echoes the Sampson Court's statement in this regard and cites the same authority cited by the Sampson Court in support of that statement. The Sampson Court concluded:

"The logic of the summary-judgment reversals in those cases is that if the non-moved-for claims were never properly presented to the trial court for adjudication in the summary-judgment motions, the nonmoving parties had no notice to

11

present arguments or evidence against summary judgment on those claims, the movants never satisfied the initial burden of production for entitlement to a summary judgment, and, therefore, the trial courts never had authority to enter a summary judgment on those claims."

Id.

We conclude that the principles from Sampson noted above are inapplicable to the circumstances presented here. These cases do not involve a lack of notice to the Collinses that West Alabama Bank was seeking summary judgments regarding any claims asserted in its complaints. As noted above, the motions explicitly sought summary judgments regarding "any and all claims" that West Alabama Bank had asserted and any counterclaims that the Collinses had asserted against West Alabama Bank. Moreover, these cases do not involve a lack of notice to the Collinses regarding West Alabama Bank's position that there was no genuine issue of material fact regarding any of the Collinses' affirmative defenses. In other words, the circuit court did not enter the summary judgments for West Alabama Bank on a ground not addressed in its summary-judgment motions.

As noted above, the summary-judgment motions explicitly construed the Collinses' answers as asserting only one affirmative

defense -- which the summary-judgment motions addressed -- as opposed to several affirmative defenses. In response, the Collinses did not challenge West Alabama Bank's characterization of their pleadings. They also did not raise the applicability of additional affirmative defenses and produce evidence in support of those additional defenses until after the circuit court had already granted the summary-judgment motions based on the issues framed in the motions and the Collinses' responses to the motions.

Our Court has previously explained:

"A trial court decides a motion for summary judgment upon a consideration of whatever materials are submitted in support of or in opposition to the motion. Ex parte City of Montgomery, 758 So. 2d 565 (Ala. 1999), and Moore v. Glover, 501 So. 2d 1187 (Ala. 1986). The trial court cannot consider any facts not of judicial notice except those facts evidenced by materials contained in the trial court record upon submission of the motion for summary judgment. See Moore, supra. Likewise, the trial court cannot be reversed on any ground or argument not presented for or against the motion. MetFuel, Inc. v. Louisiana Well Service Co., 628 So. 2d 601 (Ala. 1993), and Bevill v. Owen, 364 So. 2d 1201 (Ala. 1979).

"An appellate court can consider a fact to support or to undermine a summary judgment only to the extent that the record on appeal contains materials from the record before the trial court evidencing that fact at the time of submission of the motion for summary judgment. Dynasty Corp. v. Alpha Resins Corp., 577 So. 2d 1278 (Ala. 1991). Likewise, the appellate court can consider an argument against the validity

of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment. Andrews v. Merritt Oil Co., 612 So. 2d 409 (Ala. 1992). On the other hand, an appellate court can affirm a summary judgment on any valid argument, regardless of whether the argument was presented to, considered by, or even rejected by the trial court. Ex parte Wiginton, 743 So. 2d 1071 (Ala. 1999), and Smith v. Equifax Services, Inc., 537 So. 2d 463 (Ala. 1988)."

Ex parte Ryals, 773 So. 2d 1011, 1013 (Ala. 2000).

In Hun Es Tu Malade? # 16, LLC v. Tucker, 963 So. 2d 55, 69 (Ala. 2006), this Court considered an argument raised by a defendant "that the trial court [had] erred in entering a summary judgment for the [plaintiffs] without giving [the defendant] an opportunity to litigate [its] affirmative defenses." In relevant part, the Tucker Court reasoned as follows:

"Although [the defendant] raised the affirmative defenses in its answer, [the defendant] failed to present any evidence of these defenses when opposing the [plaintiffs]' summary-judgment motion. In opposing the [plaintiffs]' summary-judgment motion, [the defendant] relied only on the materials it had previously submitted in support of its own summary-judgment motion. Nothing in those materials supported the affirmative defenses of changed circumstances and hardship.

"A trial court can rule on only those issues and arguments properly presented to it. A motion for a summary judgment is properly presented when the movant produces evidence tending to show that there are no genuine issues of

14

material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. Upon such a showing, the burden then shifts to the nonmovant to offer, if possible, evidence tending to establish that genuine issues of material fact do indeed exist. <u>Evidence tending to establish an affirmative defense is the type of evidence that should be submitted in opposition to a motion for a summary judgment, if the nonmovant intends to rely on those defenses to defeat the claims</u>.

"Thus, <u>if [the defendant] intended to rely on the affirmative defenses of hardship and changed circumstances to defeat the [plaintiffs]' motion for a summary judgment, the proper time to submit evidence in support of the affirmative defenses was before the trial court ruled on the pending summary-judgment motion</u>. [The defendant] did not do so. In fact, [the defendant] did just the opposite at the hearing before the trial court on the [plaintiffs]' motion for a summary judgment -- [the defendant] conceded that no genuine issues of material fact existed and that the trial court could resolve the dispute as a matter of law."

963 So. 2d at 69-70 (emphasis added; footnote omitted).

Thus, under the reasoning of <u>Tucker</u>, it is incumbent upon a defendant to assert the applicability of any properly pleaded affirmative defenses in opposition to a plaintiff's summary-judgment motion if the defendant intends to rely on those affirmative defenses in defending against the arguments raised in the summary-judgment motion. In other words, the time for producing substantial evidence demonstrating the existence of a genuine issue of material fact concerning those affirmative

15

defenses is in response to the summary-judgment motion, i.e., before the trial court enters a final judgment. If the defendant fails to do so, the trial court cannot be placed in error on appeal for failing to consider, in the abstract, whether those affirmative defenses might have been applicable when deciding on the proper disposition of the summary-judgment motion. See Tucker, 963 So. 2d at 70 ("A trial court can rule on only those issues and arguments properly presented to it.").

In light of the foregoing, we conclude that, in reviewing the circuit court's summary judgments in these cases and the evidence produced by the Collinses, this Court should consider only the evidence they produced in opposition to West Alabama Bank's summary-judgment motions. Therefore, we will not consider the evidence that the Collinses submitted for the first time in support of their postjudgment motions. When relevant to the Collinses' arguments on appeal, we explain below which of the Collinses' evidence is beyond this Court's consideration in these appeals. With that in mind, we turn to the Collinses' substantive arguments, which we have slightly reorganized for the sake of clarity based on the evidentiary determination reached above.

II. Foreclosure-Sale Prices

On appeal to this Court, the Collinses argue that a genuine issue of material fact exists as to whether the foreclosure sales of the rental property and the residential property should be set aside due to the alleged inadequacies of the foreclosure-sale prices. Specifically, the Collinses argue that "Alabama caselaw imposes [a] quasi fiduciary duty on [the] lender exercising its power of sale" and that, "[w]hile the foreclosing entity has discretion in setting the sales price, that price cannot be so low as to 'shock the conscience.'" Collinses' brief at 29. In support of their arguments on appeal, the Collinses cite, among other authorities, our Court's prior decision in Hayden v. Smith, 216 Ala. 428, 113 So. 293 (1927). See Collinses' brief at 36 ("Hayden v. Smith is the seminal case setting forth the general rule applicable in this case.").

Hayden is the foundational decision for cases like these, in which a mortgagor seeks to challenge the validity of a foreclosure sale conducted by the mortgagee based on the alleged inadequacy of the sale price. The holding in Hayden has been the rule in Alabama for almost a century, and our Court continues to rely on Hayden when asked to review whether a foreclosure sale should be invalidated. See, e.g., Martin v. Scarborough, [Ms. SC-2023-0904, Nov. 22, 2024] ___ So. 3d ___ (Ala.

17

2024).

### A. The Hayden Rule

The Hayden Court explained that a mortgagee has a general duty in how it conducts a foreclosure sale:

> "'In executing such power, [the mortgagee] becomes the trustee of the debtor, and is bound to act bona fide, and to adopt all reasonable modes of proceeding, in order to render the sale most beneficial to the debtor.'"

216 Ala. at 431, 113 So. at 295 (quoting Howard v. Ames, 3 Metcalf (44 Mass.) 308, 311 (1841)).

#### 1. A sale price at or below one-tenth of the actual value "shock[s] the conscience" and thus by "itself" may raise a "presumption" of "grounds for setting the sale aside."

Based on this general duty and "decided cases," the Hayden Court articulated a rule that, when the foreclosed property was sold at or below one-tenth of its actual value, the price realized at the sale is so inadequate as to "shock the conscience." 216 Ala. at 431, 113 So. at 295. The Hayden Court explained that, in such a circumstance, the price "'may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient grounds for setting the sale aside.'" 216 Ala. at 430, 113 So. at 295 (quoting 27 Cyc. 1508)

(emphasis added).[3] Specifically, it explained that, "when [the sale price] is not more than <u>one-tenth</u> of [the property's] actual value, we think it is <u>upon its face</u> so grossly inadequate <u>as to shock the judicial conscience</u> and <u>justifies the setting aside of the sale</u>." 216 Ala. at 431, 113 So. at 295 (emphasis added). As a result, for sale prices <u>at or below one-tenth of the property's value</u>, a court may rely on evidence of the <u>sale price alone</u> to conclude that the foreclosure sale was invalid. <u>Id.</u>

### 2. The "mere inadequacy of price is not sufficient" unless coupled with "other circumstances."

In contrast to the at-or-below-one-tenth-of-value sale-price rule, the <u>Hayden</u> Court made clear that a sale price from a public foreclosure sale that is simply "inadequate" is "not sufficient" -- by itself -- to void a

---

[3]We note that the <u>Hayden</u> Court established this "'presumption'" only when the sale price was "'so inadequate as to shock the conscience.'" 216 Ala. at 430, 113 So. at 295 (quoting 27 Cyc. 1508). The above-quoted sentence is the only instance where the word "presumption" is used in the opinion. And, the <u>Hayden</u> Court's only discussion of "shock the conscience" is in connection to a sale price that is "not more than one-tenth" of the fair market value. 216 Ala. at 431, 113 So. at 295.

This is not surprising. The <u>Hayden</u> Court's actual holding concerned only the situation of a foreclosure sale at one-tenth of the valuation of the property, since those were the actual facts in the case (the alleged value of the property was $4,000 and the sale price was $402, rendering a sale price of 10.02% of the property's actual value, which the Court rounded to one-tenth).

foreclosure sale. 216 Ala. at 430, 113 So. at 295. Our Court explained that a merely "inadequate" sale price must be coupled with "other circumstances" to set aside a foreclosure sale:

> "[A]lthough mere inadequacy of price is not sufficient to that end, it is 'always a circumstance to be considered in connection with other grounds of objection to the sale, and will be sufficient to justify setting the sale aside, when coupled with any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property.' 27 Cyc. 1508; Holdsworth v. Shannon, 113 Mo. 508, 21 S.W. 85, 35 Am. St. Rep. 719 [(1893)], where the subject is discussed quite fully, with a review of many pertinent cases; 2 Jones on Mortgages (6th Ed.) 1670."

216 Ala. at 430-31, 113 So. at 295 (emphasis added).

Restating this same standard in slightly different terms, the Hayden Court cautioned that there is "no definite rule or basis" for finding a sale price "inadequate" and explained that "each case must be judged by its own circumstances" when the sale price is above one-tenth but below one-third of the property's fair market value. 216 Ala. at 431, 113 So. at 295. Specifically, the Hayden Court wrote:

> "The decided cases indicate that in general a price less than one-third of the value of the land will be regarded as grossly inadequate, but, of course, there is no definite rule or basis for such a conclusion, and each case must be judged by its own circumstances. But, when it is not more than one-tenth of its actual value, we think it is upon its face so grossly

20

> inadequate as to shock the judicial conscience and justifies the setting aside of the sale. And when, in such a case, there was an unsatisfactory publicity in the advertisement because of the obscurity of the newspaper medium, and of its limited circulation both as to readers and municipal territory, coupled with the mortgagor's ignorance of the intended sale, we are convinced that it is the duty of a court of equity to set aside the foreclosure sale, and let in the mortgagor to redeem upon the payment of what is justly due to the purchasing junior mortgagee."

Id.

In other words, in cases in which the sale price is above one-tenth but below one-third the property's fair market value, a court cannot rely on evidence of the sale price alone to conclude that the foreclosure sale was invalid; instead, such cases "must be judged by [their] own circumstances." Id. Such "circumstances" can include "unfairness, misconduct, fraud, or even stupid management." Id. Hayden also suggests such "circumstances" may also include the inadequate advertisement of the foreclosure sale. Id. After all, an inadequately advertised foreclosure sale could raise questions about whether there was sufficient public notice for a fair auction of the property.

In sum, under the Hayden framework, a court can set aside a foreclosure sale based on evidence of an inadequate sale price: (1) if the sale price is at or below one-tenth of the property's fair market value or

21

(2) if the sale price is above one-tenth and below one-third of the property's fair market value <u>and</u> there is evidence of some "other circumstance[] showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property." <u>Id.</u>

B. Applying <u>Hayden</u> to the Summary Judgments in These Cases

Under the <u>Hayden</u> framework, we must affirm the circuit court's summary judgments in favor of West Alabama Bank. As stated previously in this opinion, when reviewing a summary judgment, we must determine

> "whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; <u>Blue Cross & Blue Shield of Alabama v. Hodurski</u>, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. <u>Wilson v. Brown</u>, 496 So. 2d 756, 758 (Ala. 1986). <u>Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact</u>. <u>Bass v. SouthTrust Bank of Baldwin County</u>, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12."

<u>Dow</u>, 897 So. 2d at 1038-39 (emphasis added). Our Court has also recently explained:

"'[W]hen a plaintiff in an ejectment action claims title to the

22

property by virtue of its having purchased the property at a foreclosure sale, the existence of a genuine issue of material fact regarding the validity of the foreclosure sale will preclude the entry of a summary judgment in favor of the plaintiff.'"

Martin, ____ So. 3d at ____ (quoting Berry v. Deutsche Bank Nat'l Tr. Co., 57 So. 3d 142, 147 (Ala. Civ. App. 2010)).

### 1. West Alabama Bank satisfied its burden of making a "prima facie showing that there is no genuine issue of material fact" as to its claims.

Recall, in the present cases, West Alabama Bank first commenced in the circuit court an ejectment action against the Collinses concerning the rental property. West Alabama Bank then commenced in the circuit court a second ejectment action against the Collinses concerning the residential property. West Alabama Bank later moved for a summary judgment in each action.

Alabama Courts have previously explained that "'"[a] prima facie showing in an ejectment action requires the plaintiff to provide substantial evidence that it has legal title to the property when the complaint was filed and right to immediate possession."'" Ballentine v. Alabama Farm Credit, ACA, 138 So. 3d 1005, 1110 (Ala. Civ. App. 2013) (citations omitted).

In support of its motion for a summary judgment as to the rental

property, West Alabama Bank provided copies of a promissory note executed by the Collinses and delivered to West Alabama Bank for around $230,000, a copy of the mortgage on the rental property that secured the promissory note, proof of publication and the notice of the mortgage-foreclosure sale published in a newspaper of general circulation in Tuscaloosa, and the mortgage-foreclosure deed for the rental property. West Alabama Bank also provided an affidavit from its CEO, in which he testified about the personal knowledge he had concerning the facts of this case.

West Alabama Bank provided similar evidence in support of its motion for a summary judgment for the residential property. It is also uncontroverted that West Alabama Bank demanded possession of both properties from the Collinses following foreclosure and that the Collinses have not relinquished possession of the properties.

The foregoing evidence provided by West Alabama Bank satisfied its burden of providing prima facie evidence that no genuine issue of material fact existed as to its legal title to and right to immediate possession of the properties at issue. See Steele v. Federal Nat'l Mortg. Ass'n, 69 So. 3d 89, 93 (Ala. 2010) (holding that a plaintiff in an ejectment

24

action must show that the "'plaintiff was possessed of the premises or has the legal title thereto … and that the defendant entered thereupon and unlawfully withholds and detains the same'" (quoting § 6-6-280(b), Ala. Code 1975)).

> ### 2. The Collinses failed to produce substantial evidence to support their affirmative defense under the Hayden framework.

Because West Alabama Bank made a "'"prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law"'" on its claims, the burden shifted to the Collinses to create "a genuine issue of material fact by establishing [their] … affirmative defense, including all of its essential elements." Ex parte Ramsay, 829 So. 2d 146, 153 (Ala. 2002) (citations omitted; emphasis added).[4]

_____

[4]"A 'genuine issue of material fact' is a disputed factual issue that is 'outcome determinative.' 'A fact is outcome determinative if the resolution of that fact [before the trial court] will establish or eliminate a claim or defense ….'" Gilmore v. Shell Oil Co., 613 So. 2d 1272, 1274 (Ala. 1993) (quoting John J. Coleman III, Summary Judgment in Alabama: The Nuances of Practice Under Rule 56, 20 Cumb. L. Rev. 1, 5 (1989), citing in turn William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 480 (1982)).

And, of course, what facts are "outcome determinative" depend on

When a motion for a summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading" but must provide other evidence to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Ala. R. Civ. P. Put another way, the determination of whether summary judgment is appropriate -- that is, whether there is "'"substantial evidence" as to the existence of a genuine issue of material fact,'" Dow, 897 So. 2d at 1038 (citations omitted) -- depends on "whether the evidence in the record could support a jury finding" for the nonmoving party (here, the Collinses). Camp v. Yeager, 601 So. 2d 924, 929 (Ala. 1992) (emphasis added); see also Tucker, 963 So. 2d at 70 (explaining that, "if [the defendant] intended to rely on the affirmative defenses … to defeat the [plaintiffs]' motion for a summary judgment, the proper time to submit evidence in support of the affirmative defenses was before the trial court

---

the substantive law relevant to the resolution of the summary-judgment motion. See Camp v. Yeager, 601 So. 2d 924, 927 (Ala. 1992) ("The principal requirement … to survive a properly supported motion for summary judgment is that [the nonmovant] must satisfy the trial judge that there is a genuine issue of material fact. The substantive law of the case must be utilized by the trial judge to aid him in determining whether there are critical facts to be determined, disputed facts that could affect the decision of a jury ….").

ruled on the pending summary-judgment motion" (emphasis added)).

Applying these legal principles to the present cases, to survive summary judgment, the Collinses were required to provide "substantial evidence" showing that a genuine issue of material fact existed as to the "essential elements" of their affirmative defense under the Hayden framework. That is, they were required to produce substantial evidence that a genuine issue of material fact existed as to whether: (1) the sale prices of the properties were at or below one-tenth of their fair market values or (2) the sale prices of the properties were above one-tenth and below one-third of their fair market values and some "other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property," existed in these cases. Hayden, 216 Ala. at 431, 113 So. at 295.

> a. The Collinses produced substantial evidence that a genuine issue of material fact existed as to whether (a) the foreclosure-sale price for the rental property was above one-tenth but below one-third of its fair market value and (b) the foreclosure-sale price for the residential property was above one-third its fair market value.

In their attempt to provide substantial evidence showing that genuine issues of material fact existed under this prong of the Hayden

27

framework in these cases, the Collinses provided three affidavits pertaining to each property. The first affidavit was from a licensed real-estate professional opining on the fair market value of each property and explaining what contributed to her opinion.

The last two affidavits -- both identical and four paragraphs long -- were from Russell Collins and Stacey Collins and alleged that they had not received demand letters to vacate after foreclosure even though their responses to the first request for admissions in the record showed that the demand letters were personally served on them. Through these affidavits, the Collinses provided evidence indicating that the fair market value of the residential property was $379,000, meaning the foreclosure-sale price of $180,000 was roughly 47.5% of the property's alleged fair market value. Additionally, their affidavits provided evidence indicating that the fair market value of the rental property was $699,000, meaning the foreclosure-sale price of $184,500 was roughly 26.4% of the property's alleged fair market value.

The Collinses thus produced substantial evidence that a genuine issue of material fact existed as to whether (a) the foreclosure-sale price for the rental property was above one-tenth but below one-third of its fair

28

market value and (b) the foreclosure-sale price for the residential property was above one-third its fair market value.

Viewing this evidence in the light most favorable to the Collinses, the foreclosure-sale prices of both properties do not fall into the lowest category of the <u>Hayden</u> framework -- that is, the sale prices of the properties were not at or below one-tenth of their fair market values such that they "shock[ed] the judicial conscience," thereby requiring the sales to be set aside on the basis of price <u>alone</u>. <u>Hayden</u>, 216 Ala. at 431, 113 So. at 295.

<u>b. The Collinses did not provide **any** evidence of "other circumstances showing unfairness, misconduct, fraud, or even stupid management" -- **until their postjudgment motions**</u>.

Because the evidence provided by the Collinses regarding the comparison of the sale prices to the fair market values of the properties did not fall into the lowest category of the <u>Hayden</u> framework, we must proceed to the next element of the <u>Hayden</u> framework. That is, the Collinses needed to provide substantial evidence that there were "other circumstances" that supported setting the sales aside, beyond simply the sale price in order to show that a genuine issue of material fact existed in these cases.

The record reveals that the Collinses did not provide any evidence (much less substantial evidence) of "other circumstances" in support of this element of their Hayden affirmative defense until their postjudgment motions. As stated previously in this opinion, we cannot consider that postjudgment evidence in reviewing the circuit court's summary judgments. See Ex parte Ryals, 773 So. 2d at 1013; Tucker, 963 So. 2d at 70.

Rather, the Collinses simply argued that the trial court should set aside the foreclosure sales based on the alleged sale prices of the foreclosed properties alone.[5] C. 356-59 ("The court should deny the

_____

[5]The Collins also argue that Berry v. Deutsche Bank National Trust Co., 57 So. 3d 142 (Ala. Civ. App. 2010), a decision of the Court of Civil Appeals, supports this argument and therefore requires that we reverse the summary judgments in these cases. Berry is a helpful opinion in the foreclosure context. We cited it in Martin v. Scarborough, [Ms. SC-2023-0904, Nov. 22, 2024] ___ So. 3d ___ (Ala. 2024), and we cite it today. However, to the extent that it could be read as holding that a foreclosure-sale price of 40% of market value -- with no other evidence -- is sufficient to create a genuine issue of material fact that the foreclosure sale is void, that reading would be inconsistent with the text of Hayden, by which we are bound and which we have not been asked to overrule. See Eickhoff Corp. v. Warrior Met Coal, LLC, 265 So. 3d 216, 224 (Ala. 2018) (refusing to overrule controlling caselaw with no request to do so); American Bankers Ins. Co. of Florida v. Tellis, 192 So. 3d 386, 392 n.3 (Ala. 2015) (quoting Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So. 2d 914, 926 (Ala. 2002)) (explaining that "'[s]tare decisis commands, at a

30

Bank's motion for summary judgment because the Collins defendants have produced evidence establishing that the foreclosure sale was invalid due to the shocking low price the Bank paid for the property at the foreclosure sale." (capitalization changed)). As our discussion of <u>Hayden</u>, <u>supra</u>, has made clear, it is only when there is evidence of a sale price that is <u>at or below one-tenth</u> of the property's fair market value that a foreclosure sale can be set aside with <u>only</u> evidence of an inadequate price. <u>Hayden</u>, 216 Ala. at 431, 113 So. at 295. Even viewing the Collinses' own evidence in the light most favorable to them, that was not the case here.

<u>Martin v. Scarborough</u> -- the most recent case in which our Court applied the <u>Hayden</u> test -- provides a helpful contrast to the present cases and illustrates when our Court has found summary judgment to be inappropriate in an ejectment action because the parties failed to meet this element.

In that case, the mortgagee, Gary Everett Martin, had previously engaged an attorney, Joseph T. Scarborough, to represent him in a

---

minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so'").

divorce action, in which the foreclosed property was a primary asset. ____ So. 3d at ____. As payment for Scarborough's services, Martin granted Scarborough a promissory note and a <u>second</u> mortgage on the foreclosed property. <u>Id.</u> at ____; <u>id.</u> at ____ (Sellers, J., concurring in the result part and dissenting in part). The foreclosing bank had previously granted Martin a home-equity line of credit on the foreclosed property, secured by a <u>first</u> mortgage on the property. <u>Id.</u> at ____; <u>id.</u> at ____ (Sellers, J., concurring in the result in part and dissenting in part).

Before the foreclosure sale, the foreclosing bank ordered and received an independent "broker's price opinion" for the property, which indicated the property's fair market value and "quick sale price." <u>Id.</u> at ____. The foreclosing bank agreed with the appraiser's "quick sale price" of $210,000, but only bid the remaining amount owed by Martin on the home-equity line of credit -- $34,929.77, or roughly 16% of the quick sale price. <u>See</u> <u>id.</u> at ____.

Ultimately, Scarborough (that is, the mortgagor's own lawyer) purchased the property at the foreclosure sale and bid exactly $1 above the amount bid by the bank. <u>Id.</u> at ____. Notably, Martin alleged that, when the bank moved to foreclose on the property, it told Scarborough

how much money Martin owed on his home-equity line of credit. See id. at ____.

A couple of months after his purchase, Scarborough commenced an ejectment action against Martin in which he alleged that Martin was refusing to vacate the property. See id. at ____. As an affirmative defense to Scarborough's ejectment claim, Martin alleged that the foreclosure sale had been "'done unlawfully, fraudulently, negligently, wantonly, and/or in bad faith'" and that Scarborough's resulting foreclosure deed was void. Id. at ____. The trial court later entered a summary judgment in favor of, among others, Scarborough, and Martin appealed that decision.

On appeal, Martin argued that Scarborough's bid of $34,930.77 at the foreclosure sale constituted approximately 15% of the property's fair market value based on the bank's preforeclosure broker's opinion. Scarborough did not dispute that valuation.

Based on the foregoing, our Court determined that there was a genuine issue of material fact regarding whether the foreclosure sale should be set aside as void. As a result, we reversed the trial court's summary judgment and instructed the fact-finder to consider "evidence

33

of the sale price and '"any <u>other circumstances</u> showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property,"' that would justify setting aside the foreclosure sale." <u>Id.</u> at ____ (quoting <u>Hayden</u>, 216 Ala. at 431, 113 So. at 295) (emphasis added).

In contrast to the facts in <u>Martin,</u> which involved multiple parties, attorney-client relationships, multiple roles for the parties, and side-disclosures among bidders, the Collinses did not provide any evidence, much less "substantial evidence," of "other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property" that would create a genuine issue of material fact that could justify setting aside the foreclosure sales in these cases.

### III. West Alabama Bank's Conduct

The Collinses further argue that "unfair lender conduct has been shown in both cases." Collinses' brief at 29. As part of this section of their principal appellate brief, the Collinses also argue that West Alabama Bank breached its duty of good faith regarding the rental property because, they say, West Alabama Bank did not offer the rental

property for sale as two separate parcels, which the Collinses contend would have increased the value of the rental property.

The Collinses' arguments regarding West Alabama Bank's allegedly unfair conduct rely on the evidence that they produced (and arguments that they made) for the first time in support of their postjudgment motions. As explained above, "this Court's review of the circuit court's summary judgment is limited to the evidence that had been produced at the time the judgment was entered." Price v. Alabama One Credit Union, 397 So. 3d 549, 558 (Ala. 2023) (citing Moore v. Glover, 501 So. 2d at 1190). Therefore, we cannot consider the evidence relied upon by the Collinses in support of these arguments in these appeals. Consequently, we cannot reverse the circuit court's summary judgments based on these arguments.

IV. Statutory Redemption

Next, the Collinses argue that the circuit court erred by determining that they forfeited their statutory right to redeem the residential property. In support of their argument, they cite § 6-5-248(h), Ala. Code 1975, which provides:

> "(h) The mortgagee who forecloses residential property
> on which a homestead exemption was claimed in the tax year

during which the sale occurred shall give notice to the mortgagor who signed the mortgage in substance as follows: "'Alabama law gives some persons who have an interest in property the right to redeem the property under certain circumstances. Programs may also exist that help persons avoid or delay the foreclosure process. An attorney should be consulted to help you understand these rights and programs as a part of the foreclosure process.' This notice shall be mailed to the mortgagor at the address of the property subject to foreclosure at least 30 days prior to the foreclosure date by certified mail with proof of mailing. This notice also shall be included in the notice required pursuant to [Ala. Code 1975, § 35-10-13. For foreclosed residential property on which a homestead exemption was claimed in the tax year during which the sale occurred, the period of time during which a right of redemption may be exercised shall not begin until notice is given in accordance with this subsection; provided that under no circumstances may a right of redemption be exercised later than one year after the date of foreclosure. A defective notice, or the failure to give notice, will not affect the validity of the foreclosure, including the transfer of title to the property. Possession or production of the proof of mailing of this notice shall constitute an affirmative defense to any action related to the notice requirement. All actions related to the notice requirement must be brought within one year after the date of foreclosure or the action shall be barred."

(Emphasis added.)

The Collinses contend that West Alabama Bank never provided them with notice of the foreclosure sale pertaining to the residential property. Because the foreclosure sale concerning the residential property occurred on December 19, 2022, and because the Collinses filed their answer and counterclaim responding to West Alabama Bank's

36

complaint on April 7, 2023, the Collinses contend that § 6-5-248(h) permitted them to "preserve[]" their statutory right of redemption. Collinses' brief at 38. We conclude that the Collinses argument in this regard fails to demonstrate reversible error for two reasons.

First, as West Alabama Bank points out in response, the Collinses did not assert in the circuit court an argument based on § 6-5-248(h). This Court cannot reverse the circuit court's judgment based on an argument not presented to it. See Ex parte Ryals, 773 So. 2d at 1013.

Second, even if the Collinses had properly preserved this argument for this Court's consideration, they have cited no authority supporting their interpretation of § 6-5-248(h). It is well settled that

> "'"[i]t is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' Butler v. Town of Argo, 871 So. 2d 1, 20 (Ala. 2003)(quoting Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994))."

Ex parte Borden, 60 So. 3d 940, 943 (Ala. 2007). Therefore, we cannot reverse the circuit court's summary judgment in favor of West Alabama Bank regarding the residential property based on the Collinses' statutory-redemption argument.

V. Postjudgment Hearing

37

Finally, the Collinses argue that the circuit court erred by failing to conduct a hearing regarding their postjudgment motions. Regarding this lack of a postjudgment hearing, we note the following.

> "In <u>Flagstar [Enterprises, Inc. v. Foster</u>, 779 So. 2d 1220, 1221 (Ala. 2000)], this Court stated:
>
>> "'In general, whether to grant or to deny a posttrial motion is within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless by its ruling the court abused some legal right and the record plainly shows that the trial court erred. See <u>Green Tree Acceptance, Inc. v. Standridge</u>, 565 So. 2d 38 (Ala. 1990). However, if a party requests a hearing on its motions for a new trial, the court must grant the request. Rule 59(g), Ala. R. Civ. P. See <u>Walls v. Bank of Prattville</u>, 554 So. 2d 381, 382 (Ala. 1989)("[W]here a hearing on a motion for [a] new trial is requested pursuant to Rule 59(g), the trial court errs in not granting such a hearing."). Although it is error for the trial court not to grant such a hearing, this error is not necessarily reversible error. For example, if an appellate court determines that there was no probable merit to the motion, it may affirm based on the harmless-error rule. See Rule 45, Ala. R. App. P.; and <u>Kitchens v. Maye</u>, 623 So. 2d 1082, 1088 (Ala. 1993)("failure to grant a hearing on a motion for new trial pursuant to Rule 59(g) is reversible error only if it 'probably injuriously affected substantial rights of the parties'").'"

<u>Ex parte Evans</u>, 875 So. 2d 297, 299-300 (Ala. 2003).

In their postjudgment motions, the Collinses first argued that the circuit court had erred by granting West Alabama Bank's summary-judgment motions because, the Collinses said, a genuine issue of material fact existed regarding the adequacy of the foreclosure-sale prices in violation of Hayden. For the reasons explained above, the Collinses have failed to demonstrate that they are entitled to relief based on that argument; therefore, the circuit court's failure to conduct a postjudgment hearing to entertain that argument was harmless error. See Ex parte Evans, 875 So. 2d at 299-300.

The Collinses' postjudgment motions then continued to argue that West Alabama Bank's conduct surrounding the foreclosure sales justified setting the sales aside. However, the Collinses' argument in that regard relied on evidence that, as explained above, they had belatedly produced for the first time in support of their postjudgment motions. See Tucker, 963 So. 2d 55 at 69-70. Therefore, we conclude that the circuit court's failure to conduct a postjudgment hearing regarding that argument was likewise harmless error. See Ex parte Evans, 875 So. 2d at 299-300.

## Conclusion

For the reasons explained above, the circuit court's summary

39

judgment in favor of West Alabama Bank on its ejectment claim regarding the residential property in appeal no. SC-2024-0274 is affirmed. Likewise, the circuit court's summary judgment in favor of West Alabama Bank on its ejectment claim regarding the rental property in appeal no. SC-2024-0275 is affirmed.

SC-2024-0274 -- AFFIRMED.

Cook, J., concurs specially, with opinion.

Bryan, J., concurs in part and concurs in the result, with opinion, which Wise, J., joins.

Sellers, J., concurs in part and concurs in the result, with opinion, which Lewis, J., joins.

Stewart, C.J., and Mendheim, J., concur in the result.

Shaw, J., concurs in the result, with opinion.

McCool, J., recuses himself.

SC-2024-0275 -- AFFIRMED.

Cook, J., concurs specially, with opinion.

Sellers, J., concurs in part and concurs in the result, with opinion, which Lewis, J., joins.

Shaw, J., concurs in the result, with opinion.

Mendheim, J., concurs in the result.

Stewart, C.J., dissents.

Bryan, J., dissents, with opinion, which Wise, J., joins.

McCool, J., recuses himself.

COOK, Justice (concurring specially).

I fully concur with the main opinion. However, I write specially to address possible future developments in this area of the law and the potential role that both the judiciary and the Legislature can play in those developments.

### I. The Judiciary's Potential Role

#### A. Should Our Court Revise or Repudiate the Hayden Framework?

Hayden v. Smith, 216 Ala. 428, 113 So, 293 (1927), is a very old decision, and the modern banking and real-property world is far different than it was when that decision was issued in 1927. For instance, modern-day mortgages are worded very differently from mortgages in 1927, especially because national organizations now prescribe certain form mortgages and promissory notes. Today, there are also many federal guidelines that regulate mortgages, as well as the servicing of loans and mortgages. There were no such guidelines in 1927. Additionally, there are now structures in place to more efficiently allocate capital. And, as for judicial process, Hayden was written before the Rules of Civil Procedure were adopted in Alabama or even in the federal system.

Further, I do not believe our Court in Hayden intended to develop

a framework for all foreclosure situations and was instead decided based on the particular set of facts before our Court at that time. To the extent that it could be read any more broadly, it is likely dicta.[6]

_____

[6]I wish to respond briefly to Justice Bryan's interpretation of my position here. First, I believe that Hayden created a substantive rule of law about what was necessary to set aside a foreclosure sale. As explained thoroughly in the main opinion, the language of Hayden indicates (except for the one-tenth example) that, "although mere inadequacy of price is not sufficient to that end, it is 'always a circumstance to be considered in connection with other grounds of objection to the sale, and will be sufficient to justify setting the sale aside, when coupled with any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property.'" Hayden, 216 Ala. at 430-31, 113 So. at 295 (quoting 27 Cyc. 1508) (emphasis added). Justice Bryan describes a different substantive rule of law -- that is, that mere inadequacy of price (below 40%) would be sufficient for a trier of fact to set aside the foreclosure sale.

Although Justice Bryan is correct that the Alabama Rules of Civil Procedure had not been adopted when our Court issued the Hayden decision, this does not mean that the substantive rule of law articulated in Hayden does not apply. Summary judgment is due under our Rules of Civil Procedure when, among other things, one party is entitled to a judgment under the applicable substantive law based upon the facts. Because the record evidence at the time the summary-judgment motions were filed showed "mere inadequacy of price," that alone was "not sufficient," and summary judgments in favor of West Alabama Bank were proper here.

Second, to be clear, my questioning of whether Hayden intended to provide a framework for all foreclosure situations arises out of the fact that Hayden does not, for instance, address the situation raised by Justice Sellers's special writing -- that is, a situation in which the note holder bids the entire debt even if that amount is below the threshold

43

I note that some states have repudiated their own versions of Hayden, finding Hayden-like standards ineffective in practice. See, e.g., Holt v. Citizens Cent. Bank, 688 S.W.2d 414, 416 (Tenn. 1984) (abandoning the rule that allowed courts to set aside a foreclosure sale if the sale price was so inadequate "as to shock the conscience of the court"). Other states have adopted other approaches. See, e.g., Smith v. Georgia Loan & Tr. Co., 114 Ga. 189, 39 S.E. 846, 848 (1901) (holding that foreclosure sales cannot be set aside due to "gross inadequacy of price" unless other circumstances "such as fraud, mistake, misapprehension, [or] surprise" are present); American Sav. & Loan Ass'n of Houston v. Musick, 531 S.W.2d 581, 587 (Tex. 1975) (holding that inadequacy of sale price alone cannot be the basis for setting aside a foreclosure sale without some other "evidence of irregularity").

It is thus long overdue to conduct a fulsome examination of the Hayden framework. However, the issues in this area of the law are not simple, nor are the solutions obvious. In the ordinary course, our Court does not overrule precedent without specific argument and without the

---

established by Hayden. Thus, I believe that my special writing is fully consistent with the main opinion.

opportunity for interested parties to provide full briefing. There are very good reasons for this policy. I thus invite parties, in a future appropriate case, to ask our Court to reexamine <u>Hayden</u> and how it is applied.

<u>B. How Should Courts Calculate Fair Market Value Under the Hayden Framework?</u>

Among the topics for which further briefing may be helpful -- regardless of whether we keep the <u>Hayden</u> framework -- is how and when courts should calculate fair market value for purposes of reviewing a foreclosure-sale price. For example, does it matter if the appraisals were conducted by independent parties or if they were conducted before, or after, the foreclosure? Should there be a presumption of value created if the creditor does conduct an independent, preforeclosure appraisal? Or would creating such a presumption incentivize the creditor to not conduct an appraisal?

It is my understanding that, at least for commercial properties, creditors sometimes hire an independent appraiser to value the property before foreclosure. For comparison purposes, the alleged values in the present cases were proposed by an expert who was hired for this litigation by the debtors after the foreclosure sales took place. In contrast, the alleged value in our Court's recent decision in <u>Martin v. Scarborough,</u>

45

[Ms. SC-2023-0904, Nov. 22, 2024] \_\_\_ So. 3d \_\_\_ (Ala. 2024), was from an independent appraiser hired before the foreclosure by the bank. In my view, there is at least a good argument that both the creditor and the debtor benefit from an appraised value determined before the bidding occurs, instead of second-guessing the value after the foreclosure sale is long over. However, <u>Hayden</u> does not expressly address any of these questions.

### C. Should a Creditor Be Required to Bid More Than the Borrower's Debt?

Justice Sellers makes important points in his special writing. To begin with, I tend to agree with him that "mortgage-foreclosure sales are public; anyone attending such sales may bid any amount they choose, including the debtor," and that "[i]t is certainly reasonable to conclude that the fair market value of a foreclosed-upon parcel of real property is the amount the general public is willing to pay for that property." \_\_\_\_\_ So. 3d at \_\_\_\_ (Sellers, J., concurring in part and concurring in the result).

More specifically, Justice Sellers suggests that a creditor should not be required to bid more than it is owed -- thus I believe he is advocating for a revision of the <u>Hayden</u> framework. I am not sure of the proper way to handle this issue, but it is an important point. In my view, the fiduciary

duty for the foreclosing party governs the <u>foreclosure procedures -- not the foreclosure result</u>. ____ So. 3d at ____ (noting that the mortgagee is bound "'"to adopt all reasonable <u>modes of proceeding</u>"'" (quoting <u>Hayden</u>, 216 Ala. at 431, 113 So. at 295, quoting in turn <u>Howard v. Ames</u>, 3 Metcalf (44 Mass.) 308, 311 (1841) (emphasis added)).

Justice Sellers also raises the question of the equities (and practicalities) of <u>requiring</u> a creditor to bid more than the debt owed. Such a rule could result in the creditor being required to pay cash out-of-pocket to the debtor who was the party who actually breached the contract.

While this issue concerns me, no party has cited (and I have not yet located) any legal authority for a rule excepting from the <u>Hayden</u> analysis cases in which the creditor bid the entire amount of the debt. Thus, I am not prepared, at least not today, to join Justice Sellers's conclusion, but I am very much interested in the debate on this issue.

II. The Legislature's Potential Role

<u>Hayden</u> addressed discrete issues -- valuation and the foreclosure sale. Because <u>Hayden</u> was a decision by this Court, it is appropriate that we consider whether (and how) we should continue to apply it. However,

47

the broader question concerning the entire legal structure of the foreclosure process is also worthy of a close examination.  This is a far more complicated problem and involves many public-policy decisions.

In 2008 and the years that followed, a foreclosure crisis swept across the nation -- including Alabama.  In the midst of that crisis, Alabama citizens were hurt and our courts and lenders suffered.  That crisis has now subsided.  With this respite, it may be time to reconsider the entire structure of foreclosure before a future crisis again engulfs our courts.

In my view, the Legislature is the preferred institution to study and debate these issues.  Notably, the Legislature has far more tools available to revise the system than our courts.  For instance, it can change the entire foreclosure process, including how required notices are made, how sales are conducted, and the judicial process for ejectment.  By contrast, courts normally consider individual cases, raising individual issues.

There is academic literature discussing the entire foreclosure process and suggesting improvements. See, e.g., Grant S. Nelson & Dale A. Whitman, Reforming Foreclosure: The Uniform Nonjudicial Foreclosure Act, 53 Duke L.J. 1399 (2004); Ann M. Burkhart, Fixing

<u>Foreclosure</u>, 36 Yale L. & Pol'y Rev. 315, 316 (2018); Christopher K. Odinet, <u>Modernizing Mortgage Law</u>, 100 N.C. L. Rev. 89 (2021); Stephen Guynn, Note, <u>A Market-Based Tool to Reduce Systematic Undervaluation of Collateral in Residential Mortgage Foreclosures</u>, 100 Va. L. Rev. 587 (2014); James J. Kelly, Jr., <u>A Continuum in Remedies: Reconnecting Vacant Houses to the Market</u>, 33 St. Louis U. Pub. L. Rev. 109 (2013).

Many of the proposals offered in that academic literature are detailed and raise important economic questions. Given my limited role as a judge, I am not in a position to decide whether any of those proposals are a good idea (or which might be best). However, I do strongly suspect that the foreclosure system from the 1920s is not the best system for the modern world. Shouting a property description on the courthouse steps, after publishing a notice in a local newspaper, is, to put it mildly, outdated. Given the vast improvements in communication and in the allocation of capital, there must be a way to improve this process.

For instance, the literature suggests that empirical studies demonstrate that an auction of real property may not maximize the sale price of real property, especially in the situation of a distressed property.

See, e.g., Burkhart at 326-28. Instead, some authors suggest that private sales by real-estate agents, a strategy already employed in the bankruptcy process, may be a better approach. Id. at 318, 360-62; see also In re Craig, 651 B.R. 612 (Bankr. S.D. Ala. 2023) (noting that "a chapter 7 [bankruptcy] trustee … regularly employs real estate agents").

Other commentators have suggested marketing the foreclosed properties online or conducting the foreclosure sales online. See, e.g., Nelson & Whitman at 1438 (discussing the comment to art. 3, § 303, of the Uniform Nonjudicial Foreclosure Act); Francesco Mazzola, Technology and Asset Liquidations: Evidence from Real Estate Collateral, SUERF Policy Brief No. 555 (March 2023).

In fact, some states allow foreclosure sales to be conducted online. See Mazzola at 2 (noting that Florida has allowed online bidding since 2008); Fla. Stat. § 45.031(10) ("Electronic sales"); Ohio Rev. Code Ann. § 2329.153 (calling for the creation of a statewide online-auction system in 2016); 2015 Colo. Legis. Serv. Ch. 113 (H.B. 15-1142) (codified at Colo. Rev. Stat. § 38-38-110) (allowing foreclosure sales to be conducted online); 2024 Ill. Legis. Serv. P.A. 103-930 (S.B. 2919) (codified at 735 Ill. Comp.

SC-2024-0274; SC-2024-0275

Stat. 5/15-1507) (same).[7]

And, tax-deed auctions are also routinely conducted online. Cf. Fla. Stat. § 197.542(4); Ga. Code Ann. § 48-2-55; Tenn. Code Ann. § 35-5-112(b); Ark. Code Ann. § 26-37-202; La. Stat. Ann. § 47:2154; Tex. Tax Code Ann. § 34.01. See also Ala. Code 1975 § 40-10-201 (permitting tax-lien auctions and sales to be conducted online).

In addition to the problems with the foreclosure sale itself, the current system of ejectment in Alabama has produced some dramatic delays, allowing the debtor to remain on the property, without payment, for years. See, e.g., Coan v. Championship Props., LLC, 404 So. 3d 237 (Ala. 2024) (noting that property was foreclosed upon in 2017 but debtor remained on property into 2023). In the meantime, the purchaser at a foreclosure sale must pay property taxes and insurance, risk damage to

[7]I note that, in a recent decision by our Court, the creditor conducted a foreclosure using the current, antiquated method and purchased the property. See Coan v. Championship Props., LLC, 404 So. 3d 237 (Ala. 2024). The creditor then marketed the property via an online auction and it eventually sold. This observation is not intended to imply that the creditor did anything wrong; it was required to use the current antiquated method to foreclose. It then chose to use an online auction, presumably because it could sell the property for a higher price in an online auction than through a sale using the antiquated courthouse-steps method.

51

the property by the debtor, and is unable to market the property -- meaning that another family cannot use the house.

Others have questioned whether the redemption process is a net positive or a net negative for our citizens -- a question on which I express no opinion. For instance, does the existence of the redemption process, see § 6-5-247 et seq., Ala. Code 1975, hurt the debtor and the creditor by driving down the price paid at foreclosure because the purchasing party does not know if they will actually own the property until the redemption period is over? Will the purchasing party be unlikely to make investments to maintain and rehabilitate the property until the redemption period is over? See, e.g., Burkhart at 361.

And, there is the question of notice. Should there be a requirement that notice of foreclosure be given to the debtor (after notice of breach), and, if so, how should that be sent? Cf., e.g., §§ 35-10-8, 35-10-13, 6-5-248(h), Ala. Code 1975. Considering the ubiquity of modern communications, it would seem relatively easy to require notice to the debtor before foreclosure and, perhaps, the use of multiple channels of communication. I understand that it is commonplace in the mortgage-servicing industry to send electronic notices, in addition to mail notices.

However, if actual receipt of notice is proven, perhaps there should not be any formalistic requirement for additional notice.

A more efficient foreclosure system, incorporating these and possibly other revisions, might be able to better maximize the value of properties upon foreclosure. This would benefit both the debtor and the creditor. It might also reduce the time foreclosed property is off the market, which could increase the overall amount of available housing. It might encourage builders to build more homes. It might free up capital so that lenders can make more loans. All Alabamians could eventually benefit.

All of this is hard work, and all of these complicated questions would benefit from the input of all affected stakeholders. The Legislature might consider requesting the input of a task force, the Alabama Law Institute, or other thoughtful organizations in crafting possible improvements to our system. While our Court has the power to overrule our previous decisions (like <u>Hayden</u>), a wholesale revision of the foreclosure system is not a task for the judiciary. Thus, in this regard, all I can do is raise questions in the hope that the Legislature will consider creating solutions in this area of the law.

SELLERS, Justice (concurring in part and concurring in the result).

I concur in all aspects of the main opinion other than Part II of the "Discussion" section, and I concur in the result to affirm the Tuscaloosa Circuit Court's summary judgments in favor of West Alabama Bank & Trust ("West Alabama Bank") on its ejectment claims concerning real property formerly owned by Russell A. Collins and Stacey D. Collins. With respect to the alleged inadequacy of the foreclosure-sale prices of the properties, I continue to adhere to the view I expressed in my special writing in Martin v. Scarborough, [Ms. SC-2023-0904, Nov. 22, 2024] ___ So. 3d ___, ___ (Ala. 2024) (Sellers, J., concurring in the result in part and dissenting in part):

> "'[M]ere inadequacy of price is not sufficient' to justify setting aside a foreclosure sale. Hayden v. Smith, 216 Ala. 428, 430, 113 So. 293, 295 (1927). There must be other evidence of misconduct or fraud. Hayden, 216 Ala. at 431, 113 So. at 295. …
>
> "At foreclosure sales, banks and other creditors simply seek to recover what they are legitimately owed. The function of foreclosure is to allow recovery of a debtor's liability by selling an asset that has value to satisfy the debt. Knowing that a debtor's promise and ability to repay a loan might be overly optimistic, promissory notes are secured by pledging an asset that has value to provide security for prompt payment. … The objective of a bank foreclosing on an asset securing a loan is not to make a profit on the foreclosure but merely to recover the outstanding indebtedness.

"A claim of wrongful foreclosure could never be supported only by the fact that a bank recovered the total amount of the debt, regardless of the value of the property. 'A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.' Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n, 607 So. 2d 180, 182 (Ala. 1992). There is no evidence indicating that the power of sale in this case was used for anything other than to secure a debt owed by [the mortgagor]. The alleged inadequacy of the price paid for the property is not enough to justify submitting [the mortgagor's] wrongful-foreclosure defense to [the purchaser's] ejectment claim to a jury."

____ So. 3d at ____.

There is no evidence in the present cases indicating that West Alabama Bank engaged in fraud or other misconduct. Rather, the evidence indicates that West Alabama Bank used its power of sale only to satisfy the debts owed to it. Indeed, West Alabama Bank points to authority indicating that "[t]he underlying purpose of a foreclosure sale is to sell property at public outcry in order to generate funds to pay the affected creditors." Broadmoor Realty, Inc. v. First Nationwide Bank, 568 So. 2d 779, 781 (Ala. 1990). That is what West Alabama Bank did. See also J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 455, 212 So. 2d 831, 843 (1968) (stating that the holder of a power of sale is a "quasi trustee with the duty of fairness and good faith in [the power of sale's]

55

execution to the end that the mortgagor's property may be disposed of to his pecuniary advantage <u>in the satisfaction of his debt</u>" (emphasis added)). And, not lost on me is West Alabama Bank's reasonable assertion that, if "a creditor must bid more than its debt where the value of the property exceeds the debt, then the banking industry in Alabama and borrowers' access to credit would be thrown into a state of disarray." West Alabama Bank's brief at 41.

Moreover, I note that mortgage-foreclosure sales are public; anyone attending such sales may bid any amount they choose, including the debtor. It is certainly reasonable to conclude that the fair market value of a foreclosed-upon parcel of real property is the amount the general public is willing to pay for that property. Finally, I also note that mortgagors are not without any means to preserve equity in their property. They may bring the mortgage debt current and avoid foreclosure, they may bid at the foreclosure sale and purchase the property, or they may exercise the statutory right of redemption.

For these reasons, I concur in the result to affirm the summary judgments in favor of West Alabama Bank on its ejectment claims.

Lewis, J., concurs.

SHAW, Justice (concurring in the result).

I concur in the result. According to the decision in <u>Hayden v. Smith</u>, 216 Ala. 428, 430-31, 113 So. 293, 295 (1927), the inadequacy of the purchase price of property at a foreclosure sale, unless it shocks the conscience, is insufficient to set aside the sale without "'other grounds of objection to the sale,'" such as "'circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property.'" (Citation omitted.) In this case, the sale prices of the subject properties do not shock the conscience as described in <u>Hayden</u>, and I see no substantial evidence of the requisite other grounds or circumstances necessary to set aside the sales.

BRYAN, Justice (concurring in part and concurring in the result in appeal no. SC-2024-0274 and dissenting in appeal no. SC-2024-0275).

In appeal no. SC-2024-0274, I concur in all aspects of the per curiam opinion other than Part II of the "Discussion" section. In appeal no. SC-2024-0275, I dissent.

On appeal, Russell A. Collins and Stacey D. Collins argue that genuine issues of material fact exist regarding their affirmative defenses asserting that the foreclosure sales pertaining to both the rental property and the residential property they owned should be set aside due to the alleged inadequacy of the foreclosure-sale prices. In affirming both summary judgments, the per curiam opinion reasons: "[T]o survive summary judgment, the Collinses were required to provide 'substantial evidence' showing that a genuine issue of material fact existed as to the 'essential elements' of their affirmative defense under the Hayden [v. Smith, 216 Ala. 428, 113 So. 293 (1927),] framework." ____ So. 3d at ____. The per curiam opinion cites no authority supporting its interpretation of the procedural precepts it contends are dictated by Hayden.

In his special concurrence, Justice Cook cautions that he "d[oes] not believe our Court in Hayden intended to develop a framework for all foreclosure situations and was instead decided based on the particular

set of facts before our Court at that time. To the extent that it could be read any more broadly, it is likely dicta." ___ So. 3d at ____ (Cook, J., concurring specially).

As is indicated from the passage quoted above, the per curiam opinion appears to have ignored Justice Cook's warning by reading <u>Hayden</u> broadly to explicitly adopt a new procedural scheme that it specifically denominates "the <u>Hayden</u> framework," which it thereafter applies to these appeals arising almost a century after <u>Hayden</u> was decided. ___ So. 3d at ___. For the reasons explained below, I agree that "our Court in <u>Hayden</u> [did not] intend[] to develop a framework" for evaluating summary judgments like those before us in these appeals. ___ So. 3d at ____ (Cook, J., concurring specially). Because the per curiam opinion so construes <u>Hayden</u>, it affirms both of the circuit court's judgments, and its novel construction of <u>Hayden</u> compels me to dissent in case no. SC-2024-0275, regarding the Collinses' rental property.

In a footnote, Justice Cook suggests that, by doing so, I am "describ[ing]" a substantive rule of law that differs from those set forth in <u>Hayden</u>. <u>Id.</u> at ___ n.6. (Cook, J., concurring specially). I disagree. My aim is only to preserve and predictably apply Alabama law.

In that pursuit, I at least take solace in the fact that nothing in Alabama law is being changed as a result of the Court's decisions in these cases. Although a majority of the Court has joined in Parts I, III, IV, and V of the "Discussion" section of the per curiam opinion, a majority has not joined in the novel analysis set forth in Part II. Therefore, that part of the opinion has no precedential value. Although the per curiam opinion's novel approach is nonbinding, I explain its deficiencies below before turning to what I regard as the proper analysis to be conducted in these cases.

A. Summary-Judgment Procedure

Hayden affirmed a trial court's decree setting aside a foreclosure sale based on a bill in equity; that case was decided in 1927 -- nearly 50 years before the procedural merger of law and equity in Alabama. See, generally, Coprich v. Jones, 406 So. 3d 58 (Ala. 2024).[8] Therefore, it

---

[8]Certain early forms of summary-judgment procedures were codified in some American jurisdictions, and the Alabama Code of 1923 provided a summary-judgment procedure for certain types of actions against certain persons. Charles E. Clark & Charles U. Samenow, The Summary Judgment, 38 Yale L.J. 423, 466-67 (1929)("The provisions include, in the main, expedited proceedings against public officers and private citizens who are in a quasi-fiduciary relation to the plaintiff. These provisions afford, in general, a direct remedy for the wrongful omissions or commissions of the persons specified."); see also §§ 10231

strains credulity to suggest, as does the per curiam opinion, that <u>Hayden</u> provides a procedural "framework" for determining what is required for a nonmovant "to survive summary judgment" under Alabama's modern Rules of Civil Procedure. ____ So. 3d at _____.

Indeed, this Court's opinion in <u>Hayden</u> noted that the trial court's final decree in that case had been rendered after reference to a register

---

through 10268, Ala. Code 1923, and §§ 6-6-680 through 6-6-740, Ala. Code 1975. "That the procedure [wa]s intended to be of a <u>punitive</u> nature is indicated by the enumeration of penalties for the various delinquencies." Clark & Samenow at 468 (emphasis added).

The Alabama Equity Rules were adopted by this Court in 1940. <u>See</u> <u>Ex parte Foshee</u>, 246 Ala. 604, 606, 21 So. 2d 827, 828 (1945). Those rules did not provide for a summary-judgment procedure in equity cases.

Moreover, our modern procedural rule governing summary-judgment practice, Rule 56 of the Alabama Rules of Civil Procedure, is based on Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> Committee Comments on 1973 Adoption of Rule 56. Before adoption of the Federal Rules of Civil Procedure in 1938, "[t]here was no comparable mechanism in equity suits since the federal equity rules did not provide for summary judgment." 10A Charles Alan Wright et al., <u>Federal Practice & Procedure</u>, § 2711 (4th ed. 2016); <u>see also</u> <u>Dempsey v. Pink</u>, 92 F.2d 572, 573 (2d Cir. 1937)("[T]here [is] no such practice in the United States courts as a summary proceeding for judgment in suits in equity ….").

Upon adoption of our Rule 56 in 1973, it was also noted that "[s]ummary judgment procedure must be regarded as an innovation in Alabama." Committee Comments on 1973 Adoption of Rule 56.

and the trial court's consideration of the register's report. 216 Ala. at 431, 113 So. at 295 ("There was a note of testimony before the court on submission for the decree settling the equities of the parties, and no additional note was necessary for the submission on the register's report."). Our modern equivalent of this practice is reflected in our procedural rule governing the appointment of masters -- Rule 53, Ala. R. Civ. P. See Committee Comments on 1973 Adoption of Rule 53. Thus, if there is a modern analog to Hayden's procedural posture, it is more likely this Court's review of a judgment that, we have said, is to be accorded the same weight as a jury verdict[9] -- a far cry from a summary judgment, which this Court reviews de novo. See Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004).

---

[9]"[A] court accepts a master's findings of fact in non-jury actions unless clearly erroneous; and to the extent the trial court has adopted the findings of a master, this same standard applies to an appellate review of these findings. Rule 53(e)(2), Ala. R. Civ. P., and committee comments to Rule 53, Rule 52, Ala. R. Civ. P., and committee comments to Rule 52. In essence, a master's report is accorded the same weight as a jury verdict and, therefore, is not to be disturbed unless it is palpably and plainly wrong. Patterson v. Lovelady, 233 Ala. 554, 556, 172 So. 646, 648 (1937)."

Burgess Mining & Constr. Corp. v. Lees, 440 So. 2d 321, 327 (Ala. 1983).

Consequently, the importance of <u>Hayden</u> is not what <u>Hayden</u> says about summary-judgment procedure because <u>Hayden</u> says nothing about summary-judgment procedure. Likewise, I see nothing in <u>Hayden</u> suggesting an attempt by the Court to declare the formulaic procedural rigidity ascribed to it by the per curiam opinion, and I doubt that the Court intended to encourage such an interpretation for equitable claims in 1927. <u>See</u>, <u>e.g.</u>, <u>Brown v. Bateh</u>, 331 So. 2d 671, 681 (Ala. 1976)("The law in this state has long recognized the flexibility of the chancellor in equity. Equity applies its own established principles, and it has its own flexible modes of procedure. <u>Donnor v. Quartermas</u>, 90 Ala. 164, 8 So. 715 (1890). Naturally, all equities should be settled and all claims adjusted. <u>Bean v. Northcutt</u>, 240 Ala. 289, 199 So. 7 (1940)."). In short, although academically interesting, I believe that the per curiam opinion's novel attempt to parse and precisely retrofit <u>Hayden</u>'s language into our modern summary-judgment procedure is simply too heavy a superimposition for that centenarian decision to carry. Or, as is sometimes said: "That dog won't hunt."[10]

---

[10]Since <u>Hayden</u> was decided, this Court has discussed that decision in four cases when reviewing summary judgments: <u>Martin v. Scarborough</u>, [Ms. SC-2023-0904, Nov. 22, 2024] ___ So. 3d ___ (Ala.

Instead, <u>Hayden</u> is better understood for its general exposition of the essential equitable principles at play in cases like these. Perhaps chief among <u>Hayden</u>'s instructions is that "each case must be judged by its own circumstances." <u>Hayden</u>, 216 Ala. at 431, 113 So. at 295. Indeed, <u>Hayden</u> was likely decided with an implicit understanding that "it [wa]s the desire and purpose of equity courts to <u>completely</u> determine, in a proper case, in a single proceeding, the respective rights and interests of all who may be properly brought within their jurisdiction, and as affecting the subject-matter." <u>Lindsey v. Standard Accident Ins. Co. of Detroit</u>, 230 Ala. 633, 638, 162 So. 267, 270 (1935)(emphasis added). As explained above, summary judgment was simply not an accepted procedural device in equity cases when <u>Hayden</u> was decided. Therefore, we can safely conclude that <u>Hayden</u>'s pronouncements were made with the assumption that summary judgment was not even an option.

With that historical background of <u>Hayden</u>'s procedural context in mind, I note the other pertinent equitable principles articulated by that

_____

2024); <u>SE Prop. Holdings, LLC v. Bama Bayou, LLC</u>, 329 So. 3d 1250, (Ala. 2020); <u>Mt. Carmel Ests., Inc. v. Regions Bank</u>, 853 So. 2d 160 (Ala. 2002); and <u>Breen v. Baldwin Cnty. Fed. Sav. Bank</u>, 567 So. 2d 1329, 1333 (Ala. 1990). In none of those cases did this Court adopt the rigid, formulaic interpretation of <u>Hayden</u> posited by the per curiam opinion.

decision:

"The general rule is that, 'where the price realized at the sale is so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.' 27 Cyc. 1508.

"And, although mere inadequacy of price is not sufficient to that end, it is 'always a circumstance to be considered in connection with other grounds of objection to the sale, and will be sufficient to justify setting the sale aside, when coupled with any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property.' 27 Cyc. 1508; Holdsworth v. Shannon, 113 Mo. 508, 21 S.W. 85, 35 Am. St. Rep. 719 [(1893)], where the subject is discussed quite fully, with a review of many pertinent cases; 2 Jones on Mortgages (6th Ed.) 1670.

"The remedial action of courts in such cases is grounded upon the duty of the mortgagee, as stated by Shaw, C.J., in Howard v. Ames, 3 Metc. ([44] Mass.) [308,] 311 [(1841)]:

"'In executing such power, he becomes the trustee of the debtor, and is bound to act bona fide, and to adopt all reasonable modes of proceeding, in order to render the sale most beneficial to the debtor.'

"The decided cases indicate that in general a price less than one-third of the value of the land will be regarded as grossly inadequate, but, of course, there is no definite rule or basis for such a conclusion, and each case must be judged by its own circumstances. But, when it is not more than one-tenth of its actual value, we think it is upon its face so grossly inadequate as to shock the judicial conscience and justifies the setting aside of the sale."

Hayden, 216 Ala. at 430-31, 113 So. at 295 (emphasis added).

I further emphasize that, like Hayden, these cases present a situation in which the foreclosing mortgagee was also the purchaser at the pertinent foreclosure sales. In Wood River Development, Inc. v. Armbrester, 547 So. 2d 844, 847 (Ala. 1989), this Court explained:

> "When a mortgagee forecloses a mortgage pursuant to a power [contained in the mortgage], the mortgagee becomes a trustee of the debtor/mortgagor, and is bound to act in good faith and adopt all reasonable modes of proceeding in order to render the sale most beneficial to the mortgagor. First National Bank of Opp[ v. Wise, 235 Ala. 124, 177 So. 636 (1937)]. This duty is imposed upon the mortgagee foreclosing under a power of sale, because the mortgagee is selling the property, and his interest is diametrically opposed to the interest of the mortgagor, especially if he is the purchaser of the property at the foreclosure sale. In such a case, the mortgagee is in a better position to hinder the sale and render it self-serving. The reasons for imposing such a duty are not present at a judicial foreclosure sale, because there the court, not the mortgagee, is selling the property."

 (Emphasis added.)

In support of their argument that a genuine issue of material fact exists in these cases, the Collinses cite a decision reversing a summary judgment -- Berry v. Deutsche Bank National Trust Co., 57 So. 3d 142 (Ala. Civ. App. 2010). In Berry, the Court of Civil Appeals noted its precedent holding the following:

"[W]hen a plaintiff in an ejectment action claims title to the property by virtue of its having purchased the property at a foreclosure sale, the existence of a genuine issue of material fact regarding the validity of the foreclosure sale will preclude the entry of a summary judgment in favor of the plaintiff."

Id. at 147.

Like the present cases and like Hayden, Berry involved a situation in which the foreclosing entity also purchased the property at issue at the foreclosure sale. Applying its precedent and general equitable principles set forth in Hayden to the circumstances presented there, the Court of Civil Appeals reasoned as follows in Berry:

"'"[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."' Dow v. Alabama Democratic Party, 897 So. 2d [1035,] 1039 [(Ala. 2004)](quoting West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989)). We conclude that fair-minded persons in the exercise of impartial judgment could reasonably infer from the 2008 tax notice that the market value of the property was $84,800 when Deutsche Bank sold the property to itself for $33,915 at the foreclosure sale. Accordingly, we conclude that the 2008 tax notice constituted substantial evidence establishing that fact for purposes of Deutsche Bank's summary-judgment motion. If satisfactorily proven at trial, that fact would justify a determination that the foreclosure sale was invalid on the ground that the price realized at the foreclosure sale was so low in relation to the market value of the property as to shock the conscience, which would constitute an affirmative defense to Deutsche Bank's ejectment claim."

67

57 So. 3d at 149.  In a footnote, the per curiam opinion in these cases

reasons:

> "<u>Berry</u> is a helpful opinion in the foreclosure context. …
> However, to the extent that it could be read as holding that a
> foreclosure-sale price of 40%[11] of market value -- <u>with no
> other evidence</u> -- is sufficient to create a genuine issue of
> material fact that the foreclosure sale is void, that reading
> would be inconsistent with the text of <u>Hayden</u>, by which we
> are bound and which we have not been asked to overrule."

____ So. 3d at ____ n.5.

However, as explained above, <u>Hayden</u> clearly did not purport to

define what constitutes a genuine issue of material fact for the purposes

of a summary judgment because summary judgments were simply not

---

[11]In <u>Berry</u>, the trial court's summary judgment in favor of the
foreclosing bank in that case had stated, in relevant part:

> "'If the Court were to assume, arguendo, that the tax notice
> market value and Zillow.com appraisal are accurate, then the
> foreclosure sale yielded less than 40% of the market value.
> Moreover, the bid price created a 30% deficiency of $13,599.00
> on the debt secured by the property.

> "'A review of case law suggests that <u>the Court can
> compare the purchase price at the foreclosure sale to the "fair
> market value"</u> in order to determine if the price was
> inadequate.  <u>There is no doubt that the above-mentioned
> numbers could "shock the conscience."</u>'"

57 So. 3d at 146 (emphasis added).

used in equity cases in 1927. Consequently, contrary to the per curiam opinion's assertion, <u>Berry</u> is not inconsistent with <u>Hayden</u>. Indeed, <u>Berry</u> is entirely consistent with <u>Hayden</u>'s characterization of a mortgagee's duties in conducting a nonjudicial-foreclosure sale and with <u>Hayden</u>'s instruction that "each case must be judged by its own circumstances." <u>Hayden</u>, 216 Ala. at 431, 113 So. at 295.

Moreover, although the per curiam opinion has relegated its discussion of <u>Berry</u> to only a footnote, it acknowledges that this Court discussed and applied <u>Berry</u> just last year. <u>See</u> <u>Martin v. Scarborough</u>, [Ms. SC-2023-0904, Nov. 22, 2024] ____ So. 3d ____, ____ (Ala. 2024).[12]

It is also worth noting -- as a practical matter -- that <u>Berry</u> has been left undisturbed by this Court for nearly 15 years, during which time it has carried the force of Alabama law and, as such, has been relied upon by numerous federal judges in resolving summary-judgment motions pending before them. <u>See</u> <u>Deutsche Bank Tr. Co. Americas v. Garst</u>, 989 F. Supp. 2d 1194, 1209 (N.D. Ala. 2013)("Just three years ago, the Alabama Court of Civil Appeals addressed a controversy involving the

---

[12]<u>Martin</u> was decided two months after the parties had completed briefing in the present appeals.

same ejectment plaintiff ..., represented by the same law firm ..., in the same procedural posture (summary judgment), as follows: 'when a plaintiff in an ejectment action claims title to the property by virtue of its having purchased the property at a foreclosure sale, the existence of a genuine issue of material fact regarding the validity of the foreclosure sale will preclude the entry of a summary judgment in favor of the plaintiff.' <u>Berry</u>, 57 So. 3d at 147 ...."); <u>Whitney Bank v. Marr</u>, Civil Action No. 11-00534-CB-M, Sep. 19, 2012 (S.D. Ala. 2012)(not reported in Federal Supplement)("Altogether, Plaintiff's credit bids amounted to 46% of the total fair market value of the properties. Viewed separately, the majority of the credit bids also fall above the conscience-shocking threshold, whatever that may be (i.e., <u>Berry's</u> 40% or <u>Hayden's</u> 33%)."); <u>Valley Nat'l Bank v. Czapla</u>, Case No. 2:20-CV-961-RAH-KFP, Jan. 17, 2023 (M.D. Ala. 2023)(not reported in Federal Supplement)("The general rule is that a price that shocks the conscience may 'raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.' <u>Berry v. Deutsche Bank Nat. Tr. Co.</u>, 57 So. 3d 142, 148 (Ala. Civ. App. 2010)(citations and quotations omitted)."); <u>Harbin v. Roundpoint Mortg. Co.</u>, Case No. 2:15-

cv-01069-RDP, Mar. 27, 2018 (N.D. Ala. 2018)(not reported in Federal Supplement)(vacated in part on other grounds by <u>Harbin v. Roundpoint Mortg. Co.</u>, 758 Fed. App'x 753 (11th Cir. 2018))("If a foreclosure sale is invalid, the foreclosed property buyer's legal title to the property is called into question and the buyer may not have a right to eject. <u>See</u> <u>Berry v. Deutsche Bank Nat. Tr. Co.</u>, 57 So. 3d 142, 150 (Ala. Civ. App. 2010)."); <u>Federal Home Loan Mortg. Corp. v. Anchrum</u>, Case No. 2:14-cv-2129-TMP, Aug. 11, 2017 (S.D. Ala. 2017)(not reported in Federal Supplement)("Under Alabama law, for a sale price to be so low as to shock the conscience, it must generally be less than two-thirds the fair market value of the property. <u>Compare</u> <u>Hayden v. Smith</u>, 216 Ala. 428, 431, 113 So. 293, 295 (1927)('The decided cases indicate that in general a price less than one-third of the value of the land will be regarded as grossly inadequate.') <u>and</u> <u>Berry v. Deutsche Bank National Trust Co.</u>, 57 So. 3d 142 (Ala. 2010)(sale price of 40% of the fair market value was inadequate) <u>with</u> <u>Tidmore v. Citizens Bank & Trust</u>, 250 So. 3d 577 … [(Ala. Civ. App. 2017)](sale price <u>not</u> inadequate where it was 69% of the original mortgage value)."); and <u>Federal Home Loan Mortg. Corp. v. Pugh</u>, Case No. 2:14-cv-138-TMP, Aug. 11, 2015 (N.D. Ala. 2015)(not reported in

Federal Supplement)(citing <u>Berry</u> for its explanation of the respective burdens of production in the summary-judgment context for ejectment actions).

Additionally, the Court of Civil Appeals has cited <u>Berry</u> on numerous occasions since its release. <u>See</u> <u>Tidmore v. Citizens Bank & Tr.</u>, 250 So. 3d 577, 590 (Ala. Civ. App. 2017)("Our courts have held that a foreclosure sale may be invalidated if the price for which property is sold at the foreclosure sale is '"'so inadequate as to shock the conscience, [and, thus,] may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.'"' <u>Campbell v. Bank of America, N.A.</u>, 141 So. 3d [492,] 496 [(Ala. Civ. App. 2012)](quoting <u>Hayden v. Smith</u>, 216 Ala. 428, 430, 113 So. 293, 295 (1927)).  <u>See also</u> <u>Berry v. Deutsche Bank Nat'l Trust Co.</u>, 57 So. 3d 142, 148 (Ala. Civ. App. 2010)(same).");  <u>Ballentine v. Alabama Farm Credit, ACA</u>, 138 So. 3d 1005, 1010 (Ala. Civ. App. 2013)(citing <u>Berry</u> for its explanation of the respective burdens of production in the summary-judgment context for ejectment actions); and <u>Campbell v. Bank of America, N.A.</u>, 141 So. 3d 492, 499 (Ala. Civ. App. 2012)("In <u>Berry</u>, a majority of this court reversed a summary judgment

in favor of the mortgagee, holding that there was a genuine issue of material fact as to whether 'the foreclosure sale was invalid on the ground that the price realized at the foreclosure sale was so low in relation to the market value of the property as to shock the conscience, which would constitute an affirmative defense to [the mortgagee's] ejectment claim.' 57 So. 3d at 149. That holding is consistent with the general principle previously discussed that, if the purchase price is so inadequate as to shock the conscience and raise a presumption of fraud, the inadequacy is a circumstance that may render the foreclosure sale void in Alabama. See Hayden v. Smith, supra.").

"'"If a decision has been made upon solemn and mature consideration, the presumption is in favor of its correctness, and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions by it.'"" Exxon Corp. v. Department of Conservation & Nat. Res., 859 So. 2d 1096, 1102 (Ala. 2002)(quoting Lindsay v. United States Sav. & Loan Ass'n, 120 Ala. 156, 167, 24 So. 171, 174 (1898)).

In light of the foregoing history, I conclude that Berry is entirely relevant to the summary-judgment inquiries presented by these appeals.

In considering both <u>Berry</u> and <u>Hayden</u>, as this Court recently did in <u>Martin</u>, I analyze the evidence produced regarding the foreclosure sales at issue in these appeals as follows.

### B. The Residential Property (Case No. SC-2024-0274)

West Alabama Bank purchased the residential property at its foreclosure sale on December 12, 2022, with a credit bid of $180,000, which represented the entire indebtedness owed by the Collinses to West Alabama Bank under the relevant promissory note. In response to West Alabama Bank's summary-judgment motion, the Collinses produced an affidavit executed by Allison Adams, a real-estate broker, who opined that the fair market value of the residential property was $379,000 when she executed her affidavit on December 14, 2023. In support of their relevant postjudgment motion, the Collinses submitted evidence indicating that the fair market value of the residential property may have been more than $379,000. However, for the reasons explained in the per curiam opinion, we cannot consider that evidence in this appeal. <u>See</u> <u>Moore v. Glover</u>, 501 So. 2d 1187, 1189 (Ala. 1986).

In the circuit court, West Alabama Bank moved to strike Adams's affidavit, arguing that the Collinses had failed to properly disclose Adams

as an expert witness. However, the circuit court did not rule on West Alabama Bank's motion to strike. "Therefore, we must assume that the circuit court considered the affidavit when ruling on [West Alabama Bank]'s summary-judgment motion. See Fogarty v. Southworth, 953 So. 2d 1225, 1233 (Ala. 2006)." Byrne v. Fisk, 385 So. 3d 973, 980 (Ala. 2023). On appeal, West Alabama Bank does not challenge Adams's valuation of the residential property and instead argues that the foreclosure-sale price should be regarded as sufficient because the amount of West Alabama Bank's credit bid was equal to the entire amount of indebtedness owed by the Collinses for the residential property. Irrespective of West Alabama Bank's argument on this point concerning the residential property, I conclude that the Collinses have failed to demonstrate a genuine issue of material fact regarding whether the foreclosure sale pertaining to the residential property should be set aside based on the alleged inadequacy of the foreclosure-sale price.

As noted above, the Collinses rely on Berry in support of this argument. However, in Berry, the Court of Civil Appeals concluded that a sale price of approximately 40% of the property's fair market value was sufficient to create a genuine issue of material fact regarding whether the

75

foreclosure sale was invalid on the ground that the price realized at the foreclosure sale was so low in relation to the fair market value of the property as to shock the conscience. By contrast, in this case, the foreclosure-sale price for the residential property was approximately 47.5% of the fair market value of the property, according to the valuation produced by the Collinses. The Collinses have cited no authority holding that such a sale price is in and of itself sufficient to create a genuine issue of material fact regarding whether a foreclosure sale should be set aside. See Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994). Therefore, I concur in the result to affirm the circuit court's summary judgment in favor of West Alabama Bank regarding its ejectment claim pertaining to the residential property.

C. The Rental Property (Case No. SC-2024-0275)

West Alabama Bank purchased the rental property at its foreclosure sale on November 8, 2022, with a credit bid of $184,500, which represented the entire indebtedness owed by the Collinses to West Alabama Bank under the relevant promissory note. In response to West Alabama Bank's summary-judgment motion, the Collinses produced an affidavit executed by Adams, who opined that the fair market value of

the rental property was $699,000 when she executed her affidavit in December 2023. In support of their relevant postjudgment motion, the Collinses submitted evidence indicating that the fair market value of the rental property may have been more than $699,000. However, for the reasons explained in the per curiam opinion, we cannot consider that evidence in this appeal. See Moore, 501 So. 2d at 1189.

West Alabama Bank moved to strike Adams's affidavit in the circuit court, arguing that the Collinses had failed to properly disclose Adams as an expert witness. Again, however, the circuit court did not rule on West Alabama Bank's motion to strike; therefore, we must assume that the circuit court considered it. See Byrne, 385 So. 3d at 980.

As with the residential property, West Alabama Bank does not challenge on appeal Adams's valuation of the rental property[13] and instead argues that the foreclosure-sale price should be regarded as sufficient because the amount of West Alabama Bank's credit bid was

_____

[13]In the circuit court, West Alabama Bank asserted that, in addition to its preforeclosure mortgage debt, the rental property was also encumbered by several junior judgment liens. However, West Alabama Bank produced no evidence indicating how those liens affected the fair market value of the rental property. West Alabama Bank does not discuss those liens on appeal.

equal to the entire amount of indebtedness owed by the Collinses under the relevant promissory note. Based on Adams's valuation of the rental property, the foreclosure-sale price for the rental property was approximately 26.4% of its fair market value.

> "As noted above, '[t]he decided cases indicate that in general a price less than one-third of the value of the land will be regarded as grossly inadequate, but, of course, there is no definite rule or basis for such a conclusion, and each case must be judged by its own circumstances.' Hayden, 216 Ala. at 431, 113 So. at 295."

Martin, ____ So. 3d at ____.

In accordance with Hayden, I conclude that the foreclosure-sale price of approximately 26.4%, which was less than one-third the value of the rental property, may have been "grossly inadequate." 216 Ala. at 431, 113 So. at 295.

> "[A]lthough mere inadequacy of price is not sufficient to [set the foreclosure sale aside], it is 'always a circumstance to be considered in connection with other grounds of objection to the sale, and will be sufficient to justify setting the sale aside, when coupled with any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property.' 27 Cyc. 1508."

Hayden, 216 Ala. at 430-31, 113 So. at 295. Therefore, as did the Court of Civil Appeals regarding the pertinent foreclosure sale in Berry, I conclude that, in light of the disparity between the sale price and the fair

market value of the rental property, a genuine issue of material fact exists regarding whether the foreclosure sale should be set aside.

As explained above, in its deconstruction of <u>Hayden</u>'s general discussion regarding equitable principles so as to attempt to fit those principles into the rigid summary-judgment formula it posits, the per curiam opinion has failed to recognize that <u>Hayden</u>'s instruction that "each case … be judged by its own circumstances" was given with the understanding that a summary judgment was simply not an accepted outcome for equity cases in 1927. 216 Ala. at 431, 113 So. at 295. Therefore, unlike the per curiam opinion, I see nothing in <u>Hayden</u> requiring this Court to affirm a summary judgment for the plaintiff in an ejectment action when the foreclosure-sale price for the property was an amount that, in comparison to the fair market value, would generally be regarded as "grossly inadequate." <u>Id.</u>

I particularly doubt such an interpretation of <u>Hayden</u> in circumstances -- like those in the present appeals and like those in <u>Berry</u> -- involving the foreclosing entity's purchase of the property at issue at a nonjudicial-foreclosure sale, which we have noted creates a special situation in which the mortgagee's "interest is diametrically opposed to

the interest of the mortgagor ….  In such a case, the mortgagee is in a better position to hinder the sale and render it self-serving."  Wood River Dev., 547 So. 2d at 847.

Based on Hayden, Berry, and Martin, I conclude that such substantial evidence has been produced regarding the foreclosure sale pertaining to the rental property.  Therefore, I would reverse the circuit court's summary judgment in favor of West Alabama Bank regarding its ejectment claim pertaining to the rental property, and I would remand case no. SC-2024-0275 to the circuit court for further proceedings.  Consequently, I dissent in case no. SC-2024-0275.[14]

_____

[14]In Martin, we reversed a summary judgment in favor of the plaintiff in an ejectment action based on the defendant's affirmative defense alleging that a foreclosure-sale price that was approximately 16.6% of the property's fair market value had been inadequate.

The per curiam opinion suggests that Martin is distinguishable because that case  involved "attorney-client relationships, multiple roles for the parties, and side-disclosures among bidders …."  ____ So. 3d at ____.  However, our decision to reverse the circuit court's summary judgment in Martin was based on the foreclosure-sale price.  Although the additional circumstances of the case were discussed in our opinion, we did not base our decision to reverse on those additional circumstances.  Indeed, as the per curiam opinion in these appeals acknowledges, we explicitly stated the following in Martin:

"During a trial of th[e ejectment] claim, the fact-finder may consider, in support of [the defendant]'s affirmative defense,

D. Section V of the Per Curiam Opinion

Because I would reverse the circuit court's judgment in case no. SC-2024-0275 on the merits, I would regard the Collinses' failure to receive a postjudgment hearing in that action as a moot issue. See Sullivan & Wills Real Estate, L.L.C. v. Cruce, 75 So. 3d 117, 120-21 (Ala. Civ. App. 2010)("Because we are reversing the circuit court's judgment based on the merits of the arguments presented on appeal, … th[e appellant's] argument [that the circuit court erred in denying its postjudgment motion without conducting a hearing] is moot."). I also consider the Collinses' failure to receive a postjudgment hearing in case no. SC-2024-0274 to be harmless error.

E. West Alabama Bank's Appellate Argument

In reaching the foregoing conclusions, I also wish to acknowledge West Alabama Bank's appellate argument pertaining to the foreclosure

_____

evidence of the sale price and '"any other circumstances showing unfairness, misconduct, fraud, or even stupid management, resulting in the sacrifice of the property,"' that would justify setting aside the foreclosure sale. Hayden, 216 Ala. at 431, 113 So. at 295 (citation omitted). In so doing, this case may be 'judged by its own circumstances.' Id."

Martin, ____ So. 3d at ____.

sales at issue and explain why its argument in that regard does not, under current Alabama law, warrant an affirmance of the circuit court's summary judgment in case no. SC-2024-0275 regarding the rental property.

On appeal, West Alabama Bank argues that, "[i]f the Collins[es] are correct and a creditor must bid more than its debt where the value of the property exceeds the debt, then the banking industry in Alabama and borrowers' access to credit would be thrown into a state of disarray." West Alabama Bank's brief at 41. In light of West Alabama Bank's concerns in this regard, I note the following.

First, creditors do not have a duty to submit a bid exceeding the amount of a debtor's indebtedness to validate a nonjudicial-foreclosure sale. As noted above, a mortgagee's duty in executing the power of sale is as follows:

> "'In executing such power, [the mortgagee] becomes the trustee of the debtor, and is bound to act bona fide, and to adopt all reasonable modes of proceeding, in order to render the sale <u>most beneficial</u> to the debtor.'"

<u>Hayden</u>, 216 Ala. at 431, 113 So. at 295 (quoting <u>Howard v. Ames</u>, 3 Metcalf (44 Mass.) 308, 311 (1841))(emphasis added). As also noted above,

"[t]his duty is imposed upon the mortgagee foreclosing under a power of sale, because the mortgagee is selling the property, and his interest is diametrically opposed to the interest of the mortgagor, especially if he is the purchaser of the property at the foreclosure sale. In such a case, the mortgagee is in a better position to hinder the sale and render it self-serving. The reasons for imposing such a duty are not present at a judicial foreclosure sale, because there the court, not the mortgagee, is selling the property."

Wood River Dev., 547 So. 2d at 847.

In its judgment, the circuit court concluded, and West Alabama Bank argues on appeal, that West Alabama Bank "satisfied its duty to [the Collinses] under the [m]ortgage by credit bidding an amount sufficient to satisfy the indebtedness." West Alabama Bank suggests that such a bid by a mortgagee absolutely renders a foreclosure sale valid. In other words, it appears that West Alabama Bank is advocating for a holding by this Court that, if a mortgagee purchases the encumbered property at a nonjudicial-foreclosure sale for an amount equal to the indebtedness owed to the mortgagee, the foreclosure sale must be regarded as valid as a matter of law.

However, neither the circuit court's judgment nor West Alabama Bank cites any authority stating such a proposition under Alabama

83

law.[15]    Contrary to the absolute nature of West Alabama Bank's proffered rule, this Court's jurisprudence indicates that a mortgagee's purchase of the relevant property at its foreclosure sale for the amount of the mortgagor's indebtedness is a factor to be considered -- among other relevant circumstances -- when determining whether the foreclosure sale should be set aside.  See Lee v. Macon Cnty. Bank, 233 Ala. 522, 528, 172 So. 662, 668 (1937)("The fact that the mortgagee bid the amount of its debt or claim for the farm lands and did not sell the lots in the city is to be considered in deciding the question of an oppressive foreclosure.").

Indeed, under certain circumstances, this Court has held that a foreclosure sale should be set aside when the mortgagee purchased the

---

[15]The circuit court's judgment and West Alabama Bank's appellate brief cite authority for the proposition that the underlying purpose of a foreclosure sale is to generate funds to satisfy the mortgagor's indebtedness.  See Broadmoor Realty, Inc. v. First Nationwide Bank, 568 So. 2d 779, 781 (Ala. 1990); and J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 455, 212 So. 2d 831, 843 (1968).  Of course, this is true. However, as explained infra, the history of Alabama law has also clearly articulated and imposed certain equitable parameters upon nonjudicial-foreclosure sales conducted by mortgagees in attempting to recover their debt.  See Lee v. Macon Cnty. Bank, 233 Ala. 522, 525, 172 So. 662, 666 (1937)("The mortgagee is charged with the duty of exercising fairness and good faith in executing the power of sale, to the end that the mortgagor's property may be disposed of to her advantage in satisfying the debt or indemnity which the mortgage was given to secure.").

property at issue in an amount equal to the balance of the mortgage debt. See, e.g., Lee, 233 Ala. at 530, 172 So. at 671 ("We have carefully examined the evidence, and hold that under the circumstances of the sale, the price bid thereat, and the value of these lands as of that time, the attempted foreclosure in solido was not efficacious as a foreclosure of the equity of redemption …."). See also De Moville v. Merchants & Farmers Bank of Greene Cnty., 233 Ala. 204, 209, 170 So. 756, 760 (1936)("All the property previously offered, as above stated, was then offered as a whole, and knocked down on the bid of the mortgagee Bank for the alleged balance due on the mortgage debt -- $14,188.25."); De Moville, 233 Ala. at 214, 170 So. at 764 ("After full consideration of the evidence in the case, we are clear to the conclusion that the price bid for the property at the mass sale thereof was greatly disproportionate to its value, and this fact, in connection with the circumstances attending the transaction which we have pointed out, rendered the foreclosure oppressive, and complainant was entitled to have it set aside in order that he might exercise his equity of redemption.").

In light of the foregoing, I disagree with West Alabama Bank's apparent contention that a mortgagee's successful bid at a foreclosure

sale equaling the amount of the mortgagor's indebtedness to the mortgagee absolutely renders the foreclosure sale valid as a matter of law, irrespective of the sales price, the fair market value of the property, or any other circumstances surrounding the sale.

Related to that point, I emphasize that, by reversing the circuit court's summary judgment in favor of West Alabama Bank's ejectment claim concerning the rental property, I would clearly not hold that the foreclosure sale is void as a matter of law based on the foreclosure-sale price.

To repeat once more: "[O]f course, there is no definite rule or basis for such a conclusion, and each case must be judged by its own circumstances." Hayden, 216 Ala. at 431, 113 So. at 295 (emphasis added). In reversing the circuit court's judgment in case no. SC-2024-0275, I would merely hold that, based on the evidence produced by the Collinses in response to West Alabama Bank's summary-judgment motion regarding the fair market value of the rental property, a genuine issue of material fact exists regarding whether the foreclosure sale pertaining to that property should be set aside and, therefore, that a summary judgment in favor of West Alabama Bank regarding its

ejectment claim concerning that property was inappropriate.

F. Conclusion

In his special writing, Justice Cook suggests that Alabama law in this area may need to be revisited and updated, and he notes a number of policy concerns at issue in cases like these. See, generally, ____ So. 3d at ____ (Cook, J., concurring specially). He may be right.

However, unless and until these issues are effectively addressed and reflected in Alabama law, I regard this Court's appropriate functions to be the preservation and clear application of Alabama law, as expressed until now. As explained above, the per curiam opinion's revisionist attempt to fabricate a rigid summary-judgment procedure from the general equitable principles set forth in Hayden is both novel and ill-fitting. To echo Justice Cook's sentiment, the per curiam opinion may be reading Hayden too "broadly." ____ So. 3d at ____ (Cook, J., concurring specially).

In these appeals, I would instead simply follow the general and predictable equitable principles from Hayden and this Court's precedent pertaining to summary judgments. My endeavor to do so compels me to concur in part and concur in the result in case no. SC-2024-0274 and to

87

dissent in case no. SC-2024-0275. If the law is appropriately changed, my position regarding the issues at play in cases like these will necessarily adjust accordingly.

Wise, J., concurs.